**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**ONE BRATENAHL PLACE CONDOMINIUM ASSOCIATION, Defendant.**

Nos. C85-3146, C85-3397.

United States District Court,
N.D. Ohio, E.D.

Sept. 18, 1986.

Lawrence Mays, Peter Levine, E.E.O.C., Cleveland, Ohio, Johnny B. Butler, Gen. Counsel (Acting), Philip B. Sklover, Associate Gen. Counsel, E.E.O.C., Washington, D.C., for plaintiff.

David Roloff, Gaines & Stern Co., L.P.A., Cleveland, Ohio, for defendant.

## ORDER TO CONDUCT GOOD FAITH CONCILIATION

KRENZLER, District Judge.

Plaintiff, the Equal Employment Opportunity Commission (the "E.E.O.C."), has instituted two separate actions against the defendant, One Bratenahl Place Condominium Association ("Bratenahl Place"). The first case (case No. C85–3146) alleges that Bratenahl Place constructively discharged Anita Parino, who, it is alleged, was sexually harassed by her supervisor. The second case (case No. C85–3397) is brought by the E.E.O.C. on behalf of Ralph Raymond, alleging that he was laid off in retaliation for his alleged cooperation in the investigation of Ms. Parino's claim of sexual harassment. Both claims have been brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. Both Ms. Parino and Mr. Raymond were security officers for Bratenahl Place.

Pending before the Court is the motion of Bratenahl Place for summary judgment filed pursuant to Fed.R.Civ.P. 56, in which Bratenahl Place asserts that the E.E.O.C. has failed to conciliate these claims.

There is no dispute as to the law which governs the Court's determination of the issue at hand. After the E.E.O.C. issues a Letter of Determination that there is reasonable cause to believe that the charge of discrimination is true, it must attempt to conciliate the charge before bringing a civil action. Only if the E.E.O.C. is unable to secure a conciliation agreement acceptable to it may it bring a civil action. *See* 42 U.S.C. § 2000e–5(b) and (f); *E.E.O.C. v. Sears, Roebuck and Co.*, 650 F.2d 14 (2d Cir.1981); *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir.1976).

The Sixth Circuit has made clear its position that before the E.E.O.C. may bring a suit it must first make a *"good faith* effort to conciliate the claim." *E.E.O.C. v. Keco Industries, Inc.*, 748 F.2d 1097, 1102 (1984). (Emphasis added.) However, after an employer rejects an offer made by the E.E.O.C., the E.E.O.C. has no further duty to conciliate. " ... [O]nce the employer rejects the conciliation attempt, the E.E.O.C. is free to file suit under Title VII." *Keco Industries, Inc., supra* at p. 1102.

Among the evidentiary material attached to defendant's motion for summary judgment was the affidavit of David Roloff, Esq., counsel for defendant. Also before the Court, attached to the E.E.O.C.'s opposition brief, is the affidavit of Vernell Hargrove, Employment Opportunity Specialist for the E.E.O.C.

According to these affidavits, Letters of Determination were issued by the E.E.O.C. regarding Anita Parino's charge on April 16, 1985, and regarding Ralph Raymond's charge on April 25, 1985, stating that the Commission had determined that there was reasonable cause regarding their charges of discrimination. Accompanying each letter was a "Notice of Conciliation Process" handout. This handout was referenced in the Letters of Determination wherein the Commission stated that it would " ... contact each party in the near future to begin the conciliation process."

Ms. Hargrove and Mr. Roloff held a telephone conversation on May 3, 1985. Ms. Hargrove indicates that she attempted to conciliate the two claims with Mr. Roloff over the telephone. Ms. Hargrove informed Mr. Roloff, during the conversa-

tion, of the relief sought by the E.E.O.C. to settle the claims set forth in the E.E.O.C. Compliance Manual. Mr. Roloff expressed to Ms. Hargrove his client's desire to meet in person to attempt conciliation and, in fact, requested two separate meetings for Ms. Parino and Mr. Raymond. Ms. Hargrove asked Mr. Roloff if he was coming to these meetings with the authority to resolve the claims in accordance with the relief sought by the E.E.O.C. Mr. Roloff declined to convey his client's position over the telephone and indicated to Ms. Hargrove that it was not his practice to reveal the information until the negotiating process had begun. Ms. Hargrove states that Mr. Roloff would not agree to the relief requested by the E.E.O.C. and, therefore, she told Mr. Roloff that there was "no point in meeting to further discuss conciliation." Mr. Roloff states that Ms. Hargrove inferred from his desire to wait to discuss his client's position until the meetings took place, that Mr. Roloff's client would not offer the E.E.O.C. its requested relief, whereupon she told Mr. Roloff that she saw no sense in conducting the meetings, and the conversation ended.

Ms. Hargrove followed up this conversation with Mr. Roloff with a letter to him dated May 3, 1985 explaining that if his client was unwilling to offer the full relief requested by the E.E.O.C., no further efforts to conciliate would be conducted. Mr. Harold Ferguson, District Director of the E.E.O.C., also sent Mr. Roloff a letter dated May 20, 1985 notifying him that because of the E.E.O.C.'s unsuccessful efforts to conciliate the charges, no further efforts to conciliate would be made by the E.E.O.C.

Mr. Roloff responded with his letter to Mr. Ferguson of the E.E.O.C. on June 18, 1985 stating his position that, from his perspective, no attempt had been made to conciliate the charges.

The issue to be addressed by the Court is whether or not the above-described exchange constituted a "good faith effort" by the E.E.O.C. to conciliate the claims of Ms. Parino and Mr. Raymond.

Upon reviewing the affidavits of Ms. Hargrove and Mr. Roloff along with the other evidentiary material submitted to the Court, the Court can come to only one conclusion: that the E.E.O.C. did not make a good faith effort to conciliate these claims.

The Court, in making this determination, has not judged the "form and substance" of the conciliations, *see Keco Industries, Inc., supra* at p. 1102. The record reveals that there was, at most, one telephone conversation held between Ms. Hargrove of the E.E.O.C. and Mr. Roloff, counsel for the defendant. During this conversation, the E.E.O.C. informed Bratenahl Place of the relief it sought for Ms. Parino and Mr. Raymond. There admittedly is a conflict in the affidavit as to: (1) as Ms. Hargrove asserts, Bratenahl Place's refusal to agree to the relief requested by the E.E.O.C.; and (2) as Mr. Roloff asserts, Bratenahl Place's not stating its position before the actual negotiations began.

The focus of this Court, however, is upon the E.E.O.C.'s attempt at conciliation, and whether their attempt in this case can be described as a "good faith" attempt. Conciliation involves an interchange between at least two parties. As stated in *E.E.O.C. v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166 (10th Cir.1985), conciliation is a "... flexible and responsive process.... The E.E.O.C. may make a sufficient initial effort without undertaking exhaustive investigations or proving discrimination to the employer's satisfaction, ... so long as it makes a *sincere and reasonable effort* to negotiate by providing the defendant an 'adequate opportunity to respond to all charges and negotiate possible settlements.' *Hartford Fire Insurance Co.,* 78 F.R.D. at 107." *Id.* at 1169 (citing also to *Marshall v. Sun Oil Co.,* 605 F.2d 1331, 1335 (5th Cir.1979)). (Emphasis added.)

As stated by the Supreme Court in *W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 771, 103 S.Ct. 2177, 2186, 76 L.Ed.2d 298 (1983), "Voluntary compliance with Title VII ... is an important public policy. Con-

gress intended cooperation and conciliation to be the preferred means of enforcing Title VII. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (1974). Critical to the compliance scheme is the Commission's role in settling Title VII disputes through conference, conciliation, and persuasion...."

The brief of the E.E.O.C. reflects its frustrations in attempting to negotiate with defendant Bratenahl Place *prior* to the sending of the Letters of Determination, or during its investigation. However, the conciliation effort "... in theory, *follows* an investigation and a finding of reasonable cause." *E.E.O.C. v. Dayton Tire & Rubber Co.*, 573 F.Supp. 782, 784 fn. 3 (1983). (Emphasis added.)

The Court finds that once the conciliation process with Bratenahl Place began, the E.E.O.C. did not proceed in "good faith." Bratenahl was not given an "adequate opportunity to respond to all charges and negotiate possible settlements," *Marshall v. Hartford Fire Insurance Co.*, 78 F.R.D. 97, 103 (D.Conn.1978). Bratenahl Place indicated its willingness to meet and negotiate a conciliation. Such a meeting would have provided a forum for the free exchange of ideas and proposals to hopefully reach mutually-accepted remedies. The E.E.O.C. merely gave "lip-service" to the conciliation process, in this Court's view.

The Court overrules defendant's motion for summary judgment and stays these actions for forty-five (45) days to provide the parties further opportunity to meet together for the purpose of conducting conciliation. *See Prudential Federal Savings & Loan Association, supra.*

During this period of time, these cases are hereby transferred to the Office of the Clerk of the United States District Court, Northern District of Ohio, where they shall be placed on suspended status and removed from this Court's docket. This case shall remain on suspended status until the stay order is removed. The parties to the above-captioned case shall provide immediate written notification to the Court when the conciliation process has been completed along with a status report. The Clerk of Court will then transfer these matters back to the docket of this Court where they will resume an active status and proceed toward trial.

IT IS SO ORDERED.