EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

v.

PHILLIPS COLLEGES, INC.,
et al., Defendants.

No. 96–635–CIV–T–24(E).

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 29, 1997.

Angelo Filippi, Donald C. Tyler, C. Gregory Stewart, E.E.O.C., Miami District Office, Miami, FL, James R. Neely, Jr., E.E.O.C., Washington, DC, for plaintiff.

Nancy A. Roslow, Zinober & McCrea, P.A., Tampa, FL, Michael W. Johnston, Leticia D. Alfonso, Shelly Y. Sharp, King & Spalding, Atlanta, GA, for defendants.

### ORDER

BUCKLEW, District Judge.

This cause is before the Court on the following motions:

(i) Plaintiff's Motion to Join an Additional Party (Doc. No. 45, filed June 2, 1997) (hereinafter "Plaintiff's Motion"); and

(ii) Defendants' Motion for Summary Judgment (Doc. No. 46, filed June 2, 1997) (hereinafter "Defendants' Motion").

Defendants filed a response to Plaintiff's Motion on June 16, 1997 (Doc. No. 52) (hereinafter "Defendants' Response"). Plaintiff filed a response to Defendants' Motion on June 30, 1997 (Doc. No. 54) (hereinafter "Plaintiff's Response"), and moved to file a supplemental reply brief on July 31, 1997 (Doc. No. 55), a copy of which was attached thereto (hereinafter "Defendant's Reply").[1]

This Title VII race discrimination case was brought by the Equal Employment Opportunity Commission (the "EEOC") on April 1, 1996 (Doc. No. 1), on behalf of Michael Garner, and all similarly situated employees of Defendants Phillips Educational Group of Central Florida, Inc. ("PEGCF") and Phillips Colleges, Inc. ("PCI").

The following facts are not in dispute:[2]

Mr. Garner worked for BLT Schools, Inc. ("BLT") as a student recruiter for United Electronics Institute ("UEI"). At the time of his employment, BLT was a wholly-owned subsidiary of Defendant PCI.[3] Mr. Garner's employment was terminated on February 25, 1992.[4]

On March 17, 1992, Mr. Garner filed a discrimination charge against UEI with the EEOC. On March 24, 1992, the EEOC sent a copy of the charge to UEI and referred the charge to the Florida Commission on Human Rights ("FCHR"). In the twelve months that followed, Mr. Garner's charges were investigated by the Tampa Office of Community Relations ("TOCR").

In the interim, PCI and its subsidiaries sustained a blow which would force them to make drastic changes in corporate structure. In February 1993, the Department of Education made an initial determination that PCI and its subsidiaries were liable to the federal government for more than one hundred mil-

---

1. Simultaneous with the issuance of this order, the Court has stamp-granted Defendants' Motion for Leave to File a Reply Brief (Doc. No. 55, July 31, 1997), and has directed the Clerk of the Court to file the reply brief.

2. These "facts" are taken from Defendants' Motion, Plaintiff's Response and Defendants' Reply. To the extent a "fact" is disputed by the parties, the dispute has been indicated below.

3. The relationship between UEI and BLT is not entirely clear. In Defendants' first position statement, Defendants referenced the EEOC charge as "Garner v. UEI", described the case as "Mr. Garner against Tampa College", stated that BLT is the "correct corporate legal name", and asserted that Mr. Garner was "employed by United Electronics Institute". *See* Letter dated May 18, 1992 from Kenneth R. Cass to Ronald M. McElreath, Exhibit 5 to Plaintiff's Response.

The EEOC and FCHR often referred to UEI as a "d.b.a." name for BLT. *See, e.g.,* FCHR Letter of Determination, Exhibit C to Defendants' Motion; EEOC Letter of Determination, Exhibit E

to Defendants' Motion. Later, Defendants asserted that UEI was a wholly-owned subsidiary of BLT and that both BLT and UEI employed Mr. Garner. *See* Defendants' Reply, p. 5. For purposes of the Court's ruling here, it matters not whether UEI was merely a d.b.a. of BLT or an entity separate and distinct from BLT.

As for Defendant PEGCF, PEGCF was the parent of Tampa College. The EEOC has alleged that PEGCF was a "joint employer" of Mr. Garner's, *see,* Complaint (Doc. No. 1, April 1, 1996), ¶ 5, and submitted evidence to show that PCI, BLT, UEI, PEGCF and Tampa College constituted a "single employer", *see* Plaintiff's Response, pp. 9–18.

4. Defendants claim that Mr. Garner was fired for job performance failures. Defendants' Motion, pp. 2–3. Defendants maintain that no one took Mr. Garner's place because BLT decided, shortly after it fired Mr. Garner, to discontinue recruitment efforts, to "teach out" its current enrollment, and shut down the school, which occurred in January 1993. *Id.*

lion dollars in misappropriated student loans.[5]

On June 16, 1993, the FCHR issued a Letter of Determination finding cause to believe that BLT ("d/b/a UEI") had discriminated against Mr. Garner.

On July 6, 1993, counsel for BLT requested reconsideration of the FCHR's determination. On October 7, 1993, the FCHR issued a Letter of Redetermination, once again finding cause to believe that BLT had discriminated against Mr. Garner.

According to the EEOC, the FCHR made unsuccessful attempts at conciliation sometime in October to December 1993. On December 30, 1993, the FCHR issued a Notice of Failure to Conciliate.

On July 27, 1994, the EEOC issued its own Letter of Determination, finding cause to believe BLT had discriminated against Mr. Garner.

According to the EEOC, the EEOC made several attempts to conciliate the matter throughout August, September and October of 1994. Defendants, however, assert that the EEOC made only one attempt at conciliation on September 21, 1994, when it sent a proposed conciliation agreement to BLT.

On November 4, 1994, the EEOC informed the parties that conciliation had failed and referred the case to a regional attorney for prosecution.

In the months (at least three) that followed, the EEOC sent the case to headquarters in Washington, D.C., and requested approval to file suit.

Thereafter, the EEOC learned (in April 1995, according to the EEOC) that BLT had been dissolved. (Defendants assert that they notified the EEOC on July 14, 1995 of BLT's dissolution.) BLT had been dissolved almost a year earlier (on August 26, 1994) for failing to file an annual report.

Meanwhile, on September 11, 1995, the Department of Education affirmed its initial determination (made in February 1993) that

PCI and its subsidiaries were liable to the federal government for more than one hundred million dollars in student loans. In November 1995, PCI, its subsidiaries, their secured creditors and the Department of Education entered into a settlement agreement which required PCI and its subsidiaries to shut down operations and sell off assets by December 31, 1996.

On November 27, 1995, the EEOC issued an Amended Letter of Determination naming PEGCF d/b/a Tampa College (in addition to BLT d/b/a UEI), as a defendant.[6]

On December 13, 1995, the EEOC called Michael Johnston, counsel for Defendants, to attempt conciliation. Mr. Johnston expressed his client's unwillingness to conciliate.

On April 1, 1996, the EEOC filed this lawsuit against PEGCF and PCI.

On October 17, 1996, PEGCF sold all of its operating assets to Corinthian Colleges, Inc. ("Corinthian"), and distributed the proceeds of the sale in accordance with its settlement agreement with the Department of Education, et al. On December 31, 1996, BLT and PEGCF transferred all remaining assets to PCI in exchange for an assumption of liabilities.

## I. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the grounds that (i) laches bars prosecution of this case, and (ii) the EEOC failed to conciliate as required by law.

### A. Summary Judgment Standard

The Eleventh Circuit discussed the standard for granting summary judgment in *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (1993), *reh'g and reh'g en banc denied,* 16 F.3d 1233 (11th Cir.1994):

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to inter-

---

**5.** It is not clear to what extent (if any) this determination was made public and/or relayed to the EEOC.

**6.** While it is unclear what exactly motivated the EEOC to add PEGCF as a defendant at that

particular moment in time, the complaint subsequently filed by the EEOC in this case clearly alleges that PEGCF was a "joint employer" of Mr. Garner. *See* Complaint, ¶ 5.

rogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c).

In *Hairston*, the Eleventh Circuit recognized the seminal case concerning summary judgment, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), by highlighting the following passage:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Hairston*, 9 F.3d at 918.

Finally, the parties' respective burdens and the Court's responsibilities were outlined:

> The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. *Taylor v. Espy*, 816 F.Supp. 1553, 1556 (N.D.Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. *Welch v. Celotex*, 951 F.2d 1235, 1237 (11th Cir.1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.[,]* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986);

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

Applicable substantive law will identify those facts that are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* For factual issues to be considered genuine, they must have a real basis in the record. Matsushita, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. The Court must avoid weighing conflicting evidence or making credibility determinations. *Id.* at 255, 106 S.Ct. at 2513–14. Instead, "[t]he evidence of the non-movant is to be believed in his favor." *Id.* Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–934 (11th Cir. 1989) (citation omitted).

*Id.* at 918–19. *See Mulhall v. Advance Sec. Inc.*, 19 F.3d 586, 589–90 (11th Cir.1994); *Howard v. BP Oil Co.*, 32 F.3d 520, 523–24 (11th Cir.1994).

**B. Laches**

The Eleventh Circuit discussed the application of the laches doctrine to Title VII cases in *EEOC v. Dresser Indus., Inc.*, 668 F.2d 1199, 1201–02 (11th Cir.1982):

> Laches is an equitable doctrine designed to prevent unfairness to a defendant due to a plaintiff's delay in filing suit in the absence of an appropriate statute of limitations. In *Occidental Life Insurance Co. v. E.E.O.C.*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), the Court acknowledged procedural safeguards in EEOC regulations, but found it "possible that despite these procedural protections a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordi-

nate EEOC delay in filing the action. . . . ." *Id.* at 373, 97 S.Ct. at 2458. The Court suggested that federal courts exercise their discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case" in the event of an unexcused delay by the EEOC. *Id.,* citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975).

■ To apply laches in the context of an EEOC action, the court must find "both that the plaintiff delayed inexcusably in bringing the suit and that this delay unduly prejudiced defendants." *Dresser Indus., Inc.,* 668 F.2d at 1202.

### (i) inexcusable delay

■ In the present case, Defendants argue that the EEOC's conduct constitutes inexcusable delay. The Court agrees. Among the many delays cited by Defendants, the Court notes the following inexplicable and inordinate delays: (1) it took the FCHR and the TOCR, from the time the EEOC referred Mr. Garner's charges, more than a *year and two months* to investigate the charges and reach a determination (during this time, the EEOC asserts, there was "investigative activity throughout the 10 month period", *see* Plaintiff's Response, p. 2), (2) it took the EEOC, from the date on which FCHR issued a Notice of Failure to Conciliate, *eight months* to issue it own Letter of Determination, even though the EEOC's letter essentially adopted the findings that the FCHR had made ten months earlier, (3) it took the EEOC, from the date on which it

issued a Notice of Failure to Conciliate, *a year and six months* to file suit, and (4) it took the EEOC, from the time Mr. Garner filed his charges, *four years* to file this lawsuit.

The delay caused by the EEOC's languid pursuit in this case is comparable to delays found inexcusable in other cases. *See EEOC v. Liberty Loan Corporation,* 584 F.2d 853, 856–57 (8th Cir.1978) (delay found inexcusable where the total elapsed time between the filing of the initial charge and the commencement of the lawsuit was four years and three months). *See also EEOC v. Martin Processing, Inc.,* 533 F.Supp. 227, 229–30 (W.D.Va. 1982) (fifty-three months between filing of charge and lawsuit, without explanation from EEOC, inexcusable); *EEOC v. Bray Lumber,* 478 F.Supp. 993, 997 (M.D.Ga.1979). Moreover, nothing in Plaintiff's Response offers a real or substantial explanation for the EEOC's delay. The Court therefore finds that the EEOC's demonstrated history of delay is inexcusable.[7]

### (ii) prejudice

■ Defendants argue that the reorganizations, shutdowns and liquidations of UEI, BLT and PEGCF (as well as the termination of every employee who was likely to have any personal knowledge of the circumstances surrounding Mr. Garner's termination) which occurred in the wake of the EEOC's inexcusable delay have substantially prejudiced Defendants' ability to defend themselves in this suit. Such an argument was made and accepted in *Liberty Loan Corporation,* 584

---

**7.** The Court finds particularly disturbing the facts that, notwithstanding the EEOC's Opportunity to mull over this case for four years (ten months of which were allegedly devoted to "investigative activity"), the EEOC did not discover that BLT had been dissolved until April or July of 1995 (more than a *one year* after BLT's dissolution), did not think to charge PEGCF as a "joint employer" until November 27, 1995 (more than *three years and eight months* after Mr. Garner filed his charges), and did not think to charge PCI until it filed this lawsuit on April 1, 1996 (more than *four years* after Mr. Garner filed charges). An agency investigator or official who came across Defendants' hundred million dollar liability should have appreciated the need to move more expeditiously and would have anticipated probable college closings, asset transfers, and corporate dissolutions. Nothing in the rec-

ord before the Court, however, suggests that the EEOC was even nominally vigilant.

The Court's conclusions here are reinforced by the EEOC's record, since the commencement of this lawsuit, of continuing dilatory conduct. Notwithstanding the entry of a Case Management on October 9, 1996 (some *six months* after the suit was filed) setting a generous discovery deadline of May 1, 1997 (more than a *one year* after commencement of this lawsuit and almost *four years* after TOCR had completed its ten months of "investigative activity"), the EEOC moved (in a tortoise-like fashion), on April 22, 1997 (*eight days* before the discovery deadline) to compel discovery. Moreover, on June 2, 1997, the day after the deadline for dispositive motions, the EEOC moved to join Corinthian Colleges, Inc. *See* Section II of this order, *infra.*

F.2d 853. In *Liberty Loan,* the employer successfully demonstrated that it had undergone a "drastic, company-wide reorganization" during the interim period of inexcusable EEOC delay. *Id.* at 855. That this reorganization had prejudiced the employer was "obvious" to the Eighth Circuit because (i) almost all of the management connected with the company at the time of the charge had been terminated, (ii) necessary records had been destroyed or in some cases lost, and (iii) even assuming the employer could locate the records, it would still face the hardship of locating former employees and procuring their testimony. *Id.* at 858. The Eighth Circuit concluded:

> It was well within the equitable powers of the district court to dismiss. It would be grossly unfair to require [the employer] to spend large amounts of time and money in attempting to locate former employees and records in order to defend an essentially moot lawsuit which was unreasonably delayed by EEOC.

*Id.*

This Court recognizes the hardship of locating former employees and records, and is well-acquainted with the frustration associated with trying an "essentially moot" lawsuit. However, the Court in this case cannot make a finding of prejudice on the record before it.

The record before the Court clearly indicates that the EEOC promptly notified UEI of Mr. Garner's charges on March 22, 1992. This Court has previously found that prompt notice forecloses the application of laches:

> This difference is dispositive of the issue of prejudice. Prompt notice alerted the defendant to the possibility of an enforcement suit and gave it an opportunity to gather and preserve evidence in anticipation of a court action. Because defendant had prompt notice it "could have maintained its records and taken testimony of key employees in anticipation of the ensuing litigation." Any prejudice asserted by defendant which is attributed to destroyed records or lapsed memories, then, may not be attributed to EEOC's delay. The lach-

es defense is unavailable for that reason: "A party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim."

*EEOC v. Jacksonville Shipyards, Inc.,* 690 F.Supp. 995, 1000–01 (M.D.Fla.1988) (citations and footnotes omitted). *See also EEOC v. Great Atlantic & Pacific* Tea Co., 735 F.2d at 82–83 (prejudice arising from office closing not shown because prompt notice to employer created "duty to retain personnel files"). *Cf. Dresser,* 668 F.2d at 1203 (delay inexcusable where two and a half year delay between filing of EEOC charge and company's receipt of copy of charge); *EEOC v. Firestone Tire and Rubber Co.,* 626 F.Supp. 90, 92–93 (M.D.Ga.1985) (prejudice found where EEOC did not serve notice of charges until thirty-three months after the underlying charges were filed with the EEOC).

Defendants concede that the EEOC promptly notified UEI of Mr. Garner's charges on March 24, 1992. From that point forward UEI was put on notice to (i) retain records regarding Mr. Garner, and (ii) begin its own internal investigation. That BLT intended to close UEI by January 1993 made it all the more important (albeit all the more difficult) that BLT proceed expeditiously to retain those records and begin an investigation. That "notice" was not formally given to PEGCF or PCI until years later is of no consequence. The EEOC has submitted substantial evidence which, when viewed in the light most favorable to the EEOC, clearly establishes that PCI and its subsidiaries constituted a "single employer" of Mr. Garner. *See* Plaintiff's Response, pp. 9–18. As a result, prompt notice to UEI constituted prompt notice to PCI and PEGCF. In addition, the benefits of proper record retention and of a thorough investigation by UEI would have been transferred to PCI along with the rest of BLT's assets. The Court therefore concludes that the fact that UEI was promptly notified of Mr. Garner's charges precludes a finding of prejudice to Defendants.[8]

---

8. The Court recognizes that to the extent the EEOC intends to bring suit against Defendants for discrimination against employees *other than* Mr. Garner and to the extent Defendants can show that they did not receive prompt notice of such other charges and consequently did not preserve records or make investigations regarding such other employees, Defendants may be able to show prejudice with respect to such other claims.

At the same time, Defendants have failed to demonstrate prejudice in fact. Defendants merely recount the drastic corporate closings and reorganizations which occurred in 1993 and 1996, reiterate the present state of insolvency, and assert that all of the employees which are knowledgeable about the circumstances surrounding Mr. Garner's termination were themselves terminated when the schools were shut down. This Court rejected similar generalized assertions of prejudice in *Jacksonville Shipyards, Inc.*, 690 F.Supp. at 1001 n. 2. There, the Court stated that the mere fact that witnesses have left a defendant's employ is insufficient to constitute prejudice. *Id.* (citing *EEOC v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 82 (3rd Cir.1984)). The Court was not persuaded by the argument that some witnesses were deceased or that memories had diminished because the defendant had made no showing of any specific witness' significance, much less a showing that such a witness would have been alive or would have provided valuable testimony had the case proceeded to trial more rapidly. *Id.*

In the present case, Defendants make no showing of any efforts to track down any of their former employees, and make no showing that such former employees would have provided valuable testimony had this case proceeded to trial more rapidly. Defendants make no showing of any efforts by UEI to investigate Mr. Garner's claims. Defendants do not assert that any records gathered by UEI or BLT were lost or misplaced during the corporate restructuring (much less offer a valid explanation for such loss). Put simply, Defendants point to the drastic corporate changes that PCI and its subsidiaries have undergone, but have failed to draw a connection between those changes and a prejudicial effect on the evidence necessary for Defendants to adequately defend themselves.

Having failed to establish prejudice, this Court rejects the argument that suit is barred by the application of laches.

## C. Failure to Conciliate

■ Defendants concede (i) that the EEOC Letter of Determination sent to BLT on July 27, 1994 contains an express invitation to conciliate, (ii) that the EEOC sent BLT a proposed conciliation agreement on September 21, 1994, and (iii) that when the EEOC called Michael Johnston in December 1995 to attempt conciliation with PEGCF, Mr. Johnston told the EEOC that PEGCF was unwilling to do so.[9] Defendants nevertheless argue that the above described efforts were not adequate with respect to PEGCF and PCI (which was not named as a defendant until the lawsuit was filed).

This Court cannot ignore the fact that PEGCF refused (regardless of its justification) to entertain conciliation. *See EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101–02 (6th Cir.1984) (EEOC is under no duty to attempt further conciliation after an employer rejects its offer; the EEOC need only make a good faith effort to conciliate); *see also EEOC v. Prudential Federal Savings & Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985) (EEOC's attempts sufficient where EEOC made a series of overtures to which company made no meaningful response, "particularly in view of [the employer's] insistent refusal to undertake any significant dialogue, its outright rejection of the EEOC's initial settlement proposals, and its refusal to offer any serious counterproposals"). As noted above, the EEOC has provided substantial evidence indicating that PEGCF and its corporate kin (including PCI) constituted a "single employer". Defendants cannot be heard to complain that the EEOC failed to conciliate when Defendants themselves presented an obstacle to conciliation. In any event, the Court's ruling below (in Section II) makes Defendants' argument moot.

Defendants' motion for summary judgment is therefore denied.

## II. MOTION TO JOIN ADDITIONAL PARTY

■ The EEOC moves to join Corinthian Colleges, Inc. ("Corinthian"), the corporation

---

9. Defendants argue that they had reason to refuse conciliation at that time because (1) PEGCF was not Mr. Garner's employer, (2) neither Mr. Garner nor anyone else filed an EEOC charge against PEGCF, (3) and the EEOC had not conducted an investigation of PEGCF or given it an opportunity to defend itself prior to issuing the Amended Letter. The Court notes that PEGCF has not raised any of these arguments in its motion for summary judgment.

which purchased PEGCF's operating assets on October 17, 1996, as a defendant because, the EEOC argues, the EEOC cannot obtain complete relief in Corinthian's absence. The EEOC also argues that Corinthian has an interest in the outcome of this suit and that disposition without Corinthian will impair Corinthian's ability to protect its interest. Plaintiff's motion also asserts that since the purchase of PEGCF's assets, Corinthian has continued to operate Tampa College from the same building, with some of the same workforce and some of the same supervisors as were used by PEGCF.

In response, Defendants point to the EEOC's history of inexcusable delay (described in detail above) and the fact that the EEOC expressed a concern about the proper parties to this suit as long ago as October 1996. Defendants point out that this Court previously refused to give the EEOC a full year for discovery, and that by granting this motion now, the Court will be giving the EEOC what it was refused before—an opportunity to further prolong this case with renewed and protracted discovery. Defendants argue that the EEOC's delay in moving for joinder has prejudiced them, and make the same argument (described in subsection I(B)(ii) above) regarding college closings, corporate reorganizations, and insolvency.

 As evidenced by the language of Fed.R.Civ.P. 19(a), the purpose of joinder is to afford the parties "complete adjudication" of the issues and "elimination" of the possibility of "relitigation." *Tick v. Cohen,* 787 F.2d 1490, 1493 (11th Cir.1986) (quoting *Schutten v. Shell Oil Co.,* 421 F.2d 869, 873 (5th Cir.1970)). In other words, the absent party has rights or interests which may be adversely affected by the continuation of the action without the absent party's presence, and as such the absent party should be joined. Fed.R.Civ.P. 19(a)(2)(i). Alternatively, the present parties may be unable to obtain complete relief without the absent party's presence, Fed.R.Civ.P. 19(a)(1), or the present parties may be subject to relitigation if the absent party is not present. Fed.R.Civ.P. 19(a)(2)(ii). The decision to join

a nonparty under Rule 19(a), Fed.R.Civ.P., must "be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d § 1604 at 40.

In the present case, the Court appreciates Defendants' dire circumstances and the frustration caused by the EEOC's demonstrated lack of attentiveness. Had the EEOC made a more aggressive attempt to prosecute this case, it would have moved for joinder of Corinthian some six months earlier. Notwithstanding the EEOC's delay, however, Defendants' have not established that any prejudice to their case would not have occurred had the EEOC moved more expeditiously to join Corinthian. In any event, the Court finds that the absence of Corinthian may inhibit the EEOC's ability to obtain complete relief and would subject the EEOC to unnecessary relitigation. The EEOC's motion to join Corinthian is therefore granted.

Due to the late addition of Corinthian to this case, the Court believes that the parties would benefit from an additional period of conciliation. The Court therefore orders that this case be stayed, for a period not to exceed forty-five (45) days from the date of this order, to permit attempts at conciliation between the EEOC and Corinthian, and to permit additional attempts at conciliation with PCI and PEGCF.[10] Other Courts have ordered additional conciliation in similar circumstances. *See, e.g., EEOC v. One Bratenahl Place Condo. Ass'n,* 644 F.Supp. 218, 221 (N.D.Ohio 1986) (court overruled motion for summary judgment and stayed the action for 45 days to provide more time for conciliation). Should all attempts at conciliation fail, the EEOC shall file, no later than five (5) days following the expiration of this stay, an amended complaint joining Corinthian as a defendant.

**10.** Needless to say, such stay shall not effect the Court's order referring this case to mediation

(Doc. No. 56, filed August 14, 1997).

### III. CONCLUSION

Accordingly, it is **ORDERED AND AD-JUDGED** that:

(1) Defendants' Motion for Summary Judgment (Doc. No. 46) is **DENIED.**

(2) Plaintiff's Motion to Join an Additional Party (Doc. No. 45) is **GRANTED.**

(3) This case shall be **STAYED** for a period not to exceed **forty-five (45) days** from the date of this order while efforts at conciliation are made between the EEOC and Mr. Garner on the one hand, and PCI, PEGCF and Corinthian Colleges, Inc., on the other. Should attempts at conciliation fail, the EEOC shall file, no later that **five (5) days** following the expiration of this stay, an amended complaint joining Corinthian as a defendant.