**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**RIVERVIEW ANIMAL CLINIC, P.C., Defendant.**

Civil Action No. 2:09–cv–01950–AKK.

United States District Court, N.D. Alabama, Southern Division.

Dec. 20, 2010.

**1298**

C. Emanuel Smith, Eunice H. Morrow, U.S. Equal Employment Opportunity Commission, Birmingham, AL, Gwendolyn Young Reams, James L. Lee, Equal Employment Opportunity Commission, Washington, DC, Julie Bean, Charles Guerrier, Harriett Faychelle Johnson, Equal Employment Opportunity Commission, Birmingham, AL, for Plaintiff.

Daniel J. Burnick, Robin Beardsley Mark, Sirote and Permutt PC, Birmingham, AL, for Defendant.

### *ORDER*

ABDUL K. KALLON, District Judge.

Before the court are Defendant Riverview Animal Clinic's ("Defendant") Motion for Summary Judgment, (doc. 48), and Plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Plaintiff") Motion for Partial Summary Judgment, (doc. 50). The motions are fully briefed, (docs. 49, 51, 54, 55, 57, 58), and ripe for review.

The court has considered Defendant's motion for summary judgment, Plaintiff's response, Defendant's reply, the evidentiary submissions of the parties, the pleadings filed to date, and the relevant law. Genuine issues of material fact remain in the case, including but not limited to (1) whether Lindsey Jones's ("Jones") pregnancy factored in the termination decision given Kathie Bothma's alleged confrontation of Jones about not disclosing the pregnancy during her interview for the position and subsequent statements to Jones when she terminated Jones that the termination would allow Jones to find a less stressful job more suitable for her pregnancy, and (2) whether Dr. Arthur Serwitz is the final decision maker as Defendant contends, and, if so, Bothma's role, if any, in the decision to terminate. Therefore, Defendant's motion for summary judgment is **DENIED.** The court declines to limit

Plaintiff's claim for damages as Defendant requested in its motion.

The court has also considered Plaintiff's motion for partial summary judgment on some of Defendant's affirmative defenses. For the reasons stated more fully below, the court **GRANTS** Plaintiff's motion for partial summary judgment with respect to several of Defendant's affirmative defenses.

## I. PROCEDURAL BACKGROUND

The parties largely disagree about many of the facts relevant to the merits of the case. They agree, however, on most of the facts relevant to Defendant's affirmative defenses.

On July 20, Defendant terminated Lindsey Jones, ending her employment less than one week after her introductory period began. Doc. 51 at ¶¶ 2–3. On July 25, 2007, Jones filed a charge of discrimination with Plaintiff alleging that Defendant discriminated against her because of her gender when it terminated her because of her pregnancy. *Id.* at ¶ 1. Defendant received notice of Jones' charge as well as a copy of that charge in a timely manner. *Id.* at ¶ 4. Plaintiff afforded Defendant an opportunity to respond to Jones's charge, and, in fact, Defendant responded. *Id.* at ¶ 5.

On March 24, 2009, Plaintiff issued its determination regarding Jones's charge of discrimination, a copy of which Defendant received. *Id.* at ¶ 6. Plaintiff then invited Defendant to engage in an informal conciliation process to resolve Jones's charge. *Id.* at ¶ 7. On September 11, 2009, after a series of negotiations, counsel for Defendant advised Plaintiff that the parties' settlement offers were too far apart. Doc. 51 at ¶ 8; Doc. 51–1 at 11; Doc. 55 at ¶ 1. Thereafter, on September 16, 2009, Plaintiff determined that the conciliation efforts would not prove successful. Doc. 51 at ¶ 8; Doc. 55 at ¶ 1. As a result, Plaintiff filed its lawsuit on September 30, 2009, alleging

that Defendant violated Title VII when it discharged Jones. Doc. 1; Doc. 51 at ¶ 9. In the subsequent initial disclosures, Plaintiff informed Defendant that it sought back pay and front pay for Jones as well as compensatory and punitive damages, but declined to provide a computation of damages because, at that time, it did not "have all the information necessary to calculate the total amount of damages sought in this matter." Doc. 55 at ¶ 2, p. 13. Defendant moved for summary judgment, (doc. 48), and Plaintiff moved for partial summary judgment on some of Defendant's affirmative defenses, (doc. 50).

## II. SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal citations and quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

**1300**

L.Ed.2d 202 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The existence of cross-motions for summary judgment does not affect the applicable Rule 56 standard. *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F.Supp.2d 1322, 1330 (S.D.Ala.2003) (citing *Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir.2001)).

## III. ANALYSIS

Plaintiff moves for summary judgment regarding several of Defendant's affirmative defenses. The court addresses each of these defenses below.

### A. Affirmative Defense Two

■ Defendant's second affirmative defense asserts that Plaintiff failed to satisfy the conditions precedent to instituting an action pursuant to Title VII. Doc. 6 at 4. In its response brief, Defendant makes clear that this affirmative defense is based upon Plaintiff's alleged failure to engage in the conciliation process in good faith. Doc. 55 at 3, 6. Plaintiff disagrees and asserts that it conducted conciliation in good faith and well within the parameters established by applicable caselaw. Doc. 57 at 2. The court agrees with Plaintiff.

■ Title VII permits the EEOC to file suit only after it "has been unable to secure from the respondent a conciliation agreement acceptable to the [EEOC]." *See* 42 U.S.C. § 2000e–5(f)(1). "The EEOC has fulfilled its statutory duty to attempt conciliation if it outlines to the employer the reasonable cause for its belief that Title VII has been violated, offers an opportunity for voluntary compliance, and re-

sponds in a reasonable and flexible manner to the reasonable attitudes of the employer." *E.E.O.C. v. Klingler Elec. Corp.*, 636 F.2d 104, 107 (5th Cir.1981).[1] When evaluating the EEOC's conciliation efforts, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." *Id.*

A circuit split exists regarding the appropriate level of review a court should apply to the EEOC's conciliation attempts. The Fifth Circuit, for example, scrutinizes the EEOC's conciliation efforts to ensure a degree of good faith based on reasonableness and flexibility under the *Klingler* analysis. *See, e.g., E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 468 (5th Cir.2009) (finding that the EEOC did not make its mandatory good faith effort at conciliation where it took an "all-or-nothing approach" and ignored any attempt by the defendant to negotiate or respond). Conversely, the Sixth and Tenth Circuits do not inquire into the substance of the conciliation efforts at all, requiring, instead, that the EEOC only *attempt* conciliation to satisfy its statutory mandate. *See, e.g., E.E.O.C. v. Keco Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984) ("The district court should only determine whether the EEOC made an attempt at conciliation. The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review."); *E.E.O.C. v. Zia Co.*, 582 F.2d 527, 533 (10th Cir.1978)(noting that while good faith efforts are required, "a court should not examine the details of the offers and counteroffers between the parties").

■ The Eleventh Circuit reviews conciliation attempts with a level of scruti-

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 2010.

ny akin to that of the Fifth Circuit. *See, e.g., E.E.O.C. v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1259 (11th Cir.2003) (reciting the requirements in *Klingler* and adopting them in its analysis). Courts find the reasonableness or flexibility of the EEOC lacking where it refuses to communicate or negotiate with the defendant. *Id.* at 1260–61 (noting that "it cannot be said that the EEOC acted in good faith" where it presented only one offer, demanded a remedy that was "impossible to perform," refused to extend the defendant further time to consider conciliation, ignored the defendant's attempts at communication, and did not identify any plausible theory of liability against the defendant); *E.E.O.C. v. Pet, Inc.,* 612 F.2d 1001, 1002 (5th Cir.1980) (rejecting the EEOC's withdrawal from conciliation with a party that wanted to negotiate because it "smack[ed] more of coercion than of conciliation"). However, courts in this circuit do not require the EEOC to prove its case or continue with negotiations once their futility is apparent. *See, e.g., Dinkins v. Charoen Pokphand USA, Inc.,* 133 F.Supp.2d 1237, 1244 (M.D.Ala.2001)(refusing to delve into the details and basis for the EEOC's settlement offer where the defendant had concluded that the conciliation efforts were futile); *E.E.O.C. v. Sears, Roebuck & Co.,* No. 79–1957 A, 1980 WL 108, at *13 (N.D.Ga. Mar. 14, 1980)("[T]he extended and continued efforts by the EEOC to conciliate do not show bad faith. It is not the duty of this court to examine the details of the offers and counteroffers between the parties, nor impose its notions of what the agreement should provide … to determine good faith.")(internal quotation marks and citation omitted). Moreover, "[t]he fact that [Defendant] was dissatisfied with the EEOC's explanation of its Determination is not a reason to find that the EEOC acted unreasonably." *E.E.O.C. v. Mastec N. Am., Inc.,* No. 8:05–CV–1226 SCB TGW, 2006 WL 3949167, at *8–9

(M.D.Fla. Oct. 24, 2006). Rather, "dismissal is not warranted [when] the EEOC was both responsive and reasonable in its attempt to conciliate with [the defendant]." *Id.* In other words, courts do not second-guess the EEOC's conciliation efforts so long as the EEOC acts in a reasonable and flexible manner as it negotiates with the defendant.

Turning now to the facts at hand, Defendant attacks the reasonableness with which the EEOC pursued conciliation based upon what it contends is the lack of evidence upon which the EEOC could have based its settlement offers. Doc. 55 at 4–5. The court disagrees and finds that the EEOC conducted its conciliation efforts adequately. Specifically, the EEOC provided Defendant with the basis for its findings through its discrimination determination and invited Defendant to settle the charge through voluntary conciliation. *See* docs. 57–1; 51–1 at 11. Significantly, unlike in *Asplundh,* where the EEOC refused to extend the deadline to conciliate, Plaintiff here granted Defendant just such an extension. Doc. 57–1 at 7. The parties then engaged in several months of ongoing and relatively amicable conciliation efforts involving multiple offers and counteroffers. *See id.* at 9–17. Specifically, Plaintiff provided the initial offer, Defendant countered, and each party moved towards compromise thereafter. *Id.* Significantly, Plaintiff communicated each of these offers to Jones, the charging party, who, in each instance, deemed the sum offered by Defendant insufficient. *See* doc. 57–1. Thus, the evidence refutes Defendant's claim that the EEOC offered an all or nothing demand. *See* doc. 57–1.

Interestingly, Defendant does not dispute any of these facts. Instead, Defendant bases its assertion of bad faith on its belief that Plaintiff must have all of the details regarding Jones's potential dam-

ages in order to negotiate in good faith. In its response to interrogatories, Plaintiff admitted it lacked the details necessary to provide an accurate final computation of damages in this case. Doc. 55 at ¶ 2, p. 13. Without such details, Defendant asserts, any settlement offer is unfounded and in bad faith. That contention, however, finds no support in the law. The court can find no case law suggesting that the EEOC fails to fulfill its statutory mandate where it informs a defendant of the charge, maintains open lines of communication, extends deadlines to attempt conciliation, and engages in several rounds of negotiation, lowering its offer of settlement each time. That the EEOC lacked certain details regarding Jones's damages is not tantamount to bad faith or coercion, nor does it transform Plaintiff's conciliation efforts into the inflexible, unreasonable conduct that courts reject. Moreover, settlement offers are not based exclusively or predominantly on actual losses and, in fact, routinely include emotional value which the party cannot objectively quantify. For that reason, the EEOC can in fact negotiate in good faith even if it does not have an accurate final computation of actual damages. Finally, the court notes that the EEOC communicated the offers and counteroffers to Jones, who then decided whether to accept the offers. Thus, in light of Jones's involvement and the other factors here, the court finds that the EEOC's settlement offers were well-supported and made in good faith.

On the whole, the parties conducted a negotiation that the evidence indicates was the type of reasonable interaction mandated by Congress. Plaintiff communicated with Defendant in an open and timely manner. At the conclusion of their negotiation, the parties agreed that the gap between their respective proposals was still too large and concluded that pursuing further conciliation would be futile. *Id.* at 16–17. It was only then that Plaintiff determined that conciliation had failed and, two weeks later, filed this lawsuit. Doc. 51 at ¶¶ 8–9. The court cannot identify any facts that suggest Plaintiff's posture throughout conciliation was unreasonable or inflexible, nor does the evidence support any claim that it presented a single, "take it or leave it," demand. Accordingly, the court GRANTS Plaintiff's motion for summary judgment with respect to Defendant's second affirmative defense.

## B. Affirmative Defense Three

■ Defendant's third affirmative defense is a statute of limitations defense. Doc. 6 at 4. However, as Defendant concedes, unlike individual litigants who must file suit within 90 days of receipt of a right to sue, the Supreme Court has held that Title VII imposes no similar requirement on the EEOC. *See generally Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Thus, the Court GRANTS Plaintiff's motion for summary judgment with respect to Defendant's third affirmative defense.[2]

## C. Affirmative Defense Four

■ Defendant's fourth affirmative defense asserts the complaint exceeds the scope of the Jones's charge of discrimination. Doc. 1 at 4. Plaintiff counters that its complaint mirrors almost identically the charge of discrimination. Doc. 51 at 10. While Defendant concedes that the com-

---

**2.** Defendant contends that, though no statute of limitations period applies to this action, the court should still bar the action by invoking the equitable doctrine of laches. Doc. 55 at 5–6. The court considers such an argument duplicative of Defendant's argument for equitable relief based on laches in its twenty-seventh affirmative defense, and so chooses to address Defendant's lashes defense only once, *infra.*

plaint and the charge of discrimination assert that Defendant terminated Jones because of her pregnancy, doc. 55 at 8–9, it argues nonetheless that the complaint's factual allegations exceed the charge.

■ "The permissible scope of a complaint filed under Title VII is not defined by the scope of the charge filed with the EEOC, but by the scope of the EEOC investigation, as long as that investigation reasonably grew out of the discrimination charge." *E.E.O.C. v. Reichhold Chems., Inc.*, 700 F.Supp. 524, 526 (N.D.Fla.1988) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970) and *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983)). Thus, an employee's charge provides the EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices." *E.E.O.C. v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975); *see also Dinkins v. Charoen Pokphand USA, Inc.*, 133 F.Supp.2d 1237, 1245 (M.D.Ala.2001). Indeed, if the EEOC may assert claims that reasonably grow from the charge of discrimination, it follows that the EEOC may also include factual allegations that, while not present in the charge, grow from and relate directly to the claim that the charging party alleges. *See, e.g., Jute v. Hamilton Sundstran Corp.*, 420 F.3d 166, 177–78 (2nd Cir.2005) ("[W]e find reversible error in the district court's decision not to consider adverse employment acts that [the plaintiff] did not specifically raise in the EEOC charge."); *see also Dinkins*, 133 F.Supp.2d at 1245–46 (allowing factual claims that pertain to parties not mentioned in the charging party's initial claim).

**3.** Holding complaining parties to such a strict pleading standard strikes the court as particularly inappropriate in light of the absence of legal representation at the time most parties draft their EEOC charges of discrimination.

Here, Plaintiff asserts, as Defendant concedes, the same claim that Jones alleged in her EEOC charge. Defendant's affirmative defense asserts that the complaint attempts to prove claims with factual details uncovered during the investigation that were not made in the initial charge. Moreover, Defendant contends that Jones's use of the word "inexplicitly" in her charge somehow binds Plaintiff to prove its claim of discrimination only with evidence of an explicit admission by Defendant.[3] Defendant identifies no case law holding such a strict interpretation of the EEOC's scope, nor can this court identify any case law supporting such a contention. Indeed, Plaintiff may assert facts uncovered in its investigations that reasonably grow out of and relate to the claim of discrimination in Jones's charge. Accordingly, the court GRANTS Plaintiff's motion for summary judgment with respect to Defendant's fourth affirmative defense.

## D. Affirmative Defenses Nineteen and Twenty

■ Defendant's nineteenth and twentieth affirmative defenses assert that Plaintiff is unable to prove Jones's protected conduct or link the termination to that conduct. Doc. 6 at 7. Plaintiff rightly contends, however, that protected conduct is not at issue in this case. *See* doc. 51 at 10. Proving such conduct is crucial for a Title VII claim of retaliation, but it is irrelevant in this case. Accordingly, the court GRANTS Plaintiff's motion for summary judgement with respect to Defendant's nineteenth and twentieth affirmative defenses.

*See, e.g., Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178 (2nd Cir.2005) (noting its permissive pleading standard with respect to EEOC charges of discrimination).

### E. Affirmative Defense Twenty–Seven

Defendant's twenty-seventh affirmative defense asserts that Plaintiff's claims are barred by various equitable defenses such as waiver, estoppel, ratification, acquiescence, unclean hands, and consent. Doc. 6 at 8. Defendant does not address most of these defenses, nor does it provide the court with facts that support such claims. Arguments and issues not addressed in an opposition brief are deemed waived. *Brewer v. Purvis*, 816 F.Supp. 1560, 1579 (M.D.Ga.1993), *aff'd*, 44 F.3d 1008 (11th Cir.1995) (no opinion). However, in its responsive brief, Defendant asserts that procedural flaws in Plaintiff's investigation of Jones's charge ultimately support its defenses of unclean hands and laches and, therefore, constitute a waiver of Plaintiff's claims.

#### 1. *Laches*

 As noted *supra*, Title VII does not provide a statute of limitations period for EEOC claims on behalf of complaining employees. *See generally Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). Defendant rightly notes, however, that the defense of laches is available against the EEOC. *See E.E.O.C. v. Dresser Indus., Inc.*, 668 F.2d 1199, 1202 (11th Cir.1982) ("This is the first time this Circuit has had the opportunity to evaluate the propriety of the doctrine of laches and approve of its application in an action filed by the EEOC."). "To apply laches in a particular case, the court must find both that the plaintiff delayed inexcusably in bringing the suit and that this delay unduly prejudiced the defendants." *Id.* at 1202 (citations omitted). Thus, Defendant asserts that whether the EEOC unduly delayed and whether such delay prejudiced Defendant are matters for a jury to determine. The court disagrees.

 Courts find sufficient delay to apply laches against the EEOC where several years pass between the filing of the charge of discrimination and the filing of the lawsuit, and, in particular, where significant delay occurs between the end of conciliation and the filing of the lawsuit. *See, e.g., id.* at 1201 (noting that five years passed between the initial charge and the filing of the complaint, and more than a year and a half passed between the end of conciliation and the filing of the EEOC's complaint); *E.E.O.C. v. Phillips Colls., Inc.*, 984 F.Supp. 1464, 1467–69 (M.D.Fla. 1997) (applying laches where "it took the EEOC, from the time [discriminatee] filed his charges, *four years* to file this lawsuit" and "it took the EEOC, from the date on which it issued a Notice of Failure to Conciliate, *a year and six months* to file suit")(emphasis in original); *E.E.O.C. v. Am. Mach. & Foundry, Inc.*, No. 76–456, 1976 WL 617, at *2 (M.D.Pa. Aug. 26, 1976) (basing its decision on "the passage of almost five years between the filing of the underlying charge with the EEOC and the institution of [the] suit" and a year and a half had passed between the termination of conciliation and the filing of the suit); *see also E.E.O.C. v. Moore Grp., Inc.*, No. C75–1029A, 1976 WL 554, at *2 (N.D.Ga. Mar. 25, 1976) (applying laches to a five year old claim when the EEOC ended conciliation over a year and a half before filing suit); *but see E.E.O.C. v. Jacksonville Shipyards, Inc.*, 690 F.Supp. 995, 999–1000 (M.D.Fla.1988) (finding the EEOC's failure to file suit even six years after the relevant discrimination charge did not constitute undue delay because the EEOC had promptly notified defendant when the charge was filed, had remained in communication with the defendant, and the lawsuit was filed only about one year after conciliation failed).

The instant case does not present facts indicating undue delay. As in *Jacksonville*

*Shipyards,* the "EEOC has exhibited a continuing interest in the pursuit of the discrimination charges and this interest was repeatedly communicated to defendant." 690 F.Supp. at 1000. It is undisputed that Defendant received timely notice of the charge, received an opportunity to respond, and remained in contact with Plaintiff. Doc. 51 at 4. Though Defendant complains of "Plaintiff's investigation, which took well over a year", (doc. 55 at 7), a little over two years passed from the time Jones filed her charge to the time Plaintiff ultimately filed its complaint, and less than two weeks passed from the time Plaintiff ended conciliation and the time it filed this lawsuit. This is far less time than the five year lapses and multi-year gaps in investigation that courts have found constitute undue delay. Additionally, even were such a delay excessive, Defendant has not asserted any facts indicating it was unduly prejudiced. *See, e.g., E.E.O.C. v. Rollins Acceptance Corp.,* No. 1:87–CV–929–WCO, 1988 WL 147895, at *2 (N.D.Ga. Sept. 22, 1988) (finding that "defendant did not satisfy its burden of proving laches" where the court found "a four year delay is unreasonable" but "defendant did not show that it was prejudiced by the delay since key defense witnesses were still available"). Therefore, the defense of laches is unavailable here.

### 2. *Unclean Hands*

The court rejects also Defendant's arguments in support of its unclean hands defense. To the extent Defendant reasserts its dissatisfaction with the conciliation process, those arguments are addressed *supra* in the court's review of the conciliation process. To the extent that Defendant's unclean hands defense reasserts that the EEOC improperly reached its cause determination, the court reminds Defendant of it's August 20, 2010 order. In it, the court stated: "[T]hat the EEOC may have overstepped its bounds in finding cause—as

Defendant strong believes—is an irrelevant fact to this court's disposition of this matter." Doc. 45 at 4. If Plaintiff's charge or finding is indeed lacking, there are procedures available for Defendant to avoid liability. *Id.* at 5 (citing *E.E.O.C. v. E.I. DuPont,* 373 F.Supp. 1321, 1338 (D.Del. 1974)); *see also E.E.O.C. v. Food & Commercial Workers Local 1105,* No. 88–5(9), 1988 WL 141558 (D.Or. Dec. 22, 1988) (noting that "allegations of misconduct on the part of the EEOC and/or its director in arriving at a reasonable cause decision are insufficient as a matter of law to state an affirmative defense to a Title VII action"). Accordingly, the court GRANTS Plaintiff's motion for summary judgement with respect to Defendant's twenty-seventh affirmative defense.

### F. Affirmative Defense Thirty–One

Defendant's thirty-first affirmative defense asserts that Plaintiff's claim is subject to the arbitration agreement Jones signed. Doc. 6 at 9. The Supreme Court disagrees and has held that a private individual cannot bind the EEOC's authority via an arbitration agreement, even where the EEOC sues on behalf of that individual's charge of discrimination. *See E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 287–88, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). In other words, an arbitration agreement does not bar the EEOC from pursuing victim-specific relief. *Id.* at 288, 122 S.Ct. 754. Accordingly, the court GRANTS Plaintiff's motion for summary judgment with respect to Affirmative Defense Number Thirty–One.

### IV. CONCLUSION

For the reasons stated above, the court **DENIES** Defendant's motion for summary judgment and **GRANTS** Plaintiff's motion for partial summary judgment with re-

spect to Defendant's affirmative defenses 2, 3, 4, 19, 20, 27, and 31.