Mary Nell **DINKINS**, et al., Plaintiffs,

v.

**CHAROEN POKPHAND USA, INC.**, Defendant.

**Equal Employment Opportunity, Comm'n, Plaintiff,**

v.

**Charoen Pokphand USA, Inc., et al., Defendants.**

Nos. CIV. A. 99–D–847–N, CIV. A. 99–D–1389–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 15, 2001.

See also, 133 F.Supp.2d 1254.

C. Gregory Stewart, Gwendolyn Y. Reams, Washington, DC, Jerome C. Rose, Pamela K. Agee, Jill L. Vincent, Mildred Byrd, Birmingham, AL, for EEOC.

Roderick K. Nelson, Patricia Anne Gill, Spain & Gillon, Birmingham, AL, William F. Patty, Daniel O. Rodgers, Beers Anderson Jackson Nelson Hughes & Patty, Montgomery, AL, for Charoen Pokphand.

Horace G. Williams, Courtney Reilly Pothoff, Joel P. Smith, "Chip" Williams, Williams, Pothoff, Williams & Smith, Eufala, AL, for Patrick Smith.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This is a consolidated case. Two motions are before the court in the *EEOC* case, 99–D–1389–N. The first is a Motion For Summary Judgment Against The Equal Employment Opportunity Commission,[1] which was filed by Defendant Charoen Pokphand, USA, Inc.,[2] on November 27, 2000. EEOC issued a Response on December 29, 2000,[3] and Defendant filed two replies along with a Motion To Strike. EEOC responded to the Motion To Strike within the time periods prescribed by the court. The court also invited the parties to submit additional materials, and they did so. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the Motion For Summary Judgment and the Motion To Strike are both due to be granted and denied in part.

### I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

### II. SUMMARY JUDGMENT STANDARD

The court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). At this juncture, the court does not "weigh the evi-

dence and determine the truth of the matter," but solely determines whether there is more than "metaphysical doubt" as to whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. FACTUAL BACKGROUND

This civil action involves allegations of pervasive, systemic discrimination against a class of women employed at Defendant Charoen Pokphand's live chicken processing plant in Baker Hill, Ala. Between October 1998 and March 1999, six women filed numerous charges with EEOC, each alleging sex- and gender-based discrimination with respect to job assignment, pay, and terms of employment. The complaints alleged that the plant's supervisors subjected them to humiliating, offensive contact on a daily basis. They also alleged that plant supervisors ignored or disregarded the company's sexual harassment policy, thereby contributing to a hostile work environment.

EEOC investigated the charges and ultimately sent Defendant a letter stating that it reasonably believed that Defendant had discriminated against a class of women. The agency offered to resolve these matters via conciliation, but Defendant demurred. EEOC subsequently brought this civil action, which the court consolidated with the *Dinkins* case, 99–D–847–N. The court addresses those claims in a separate memorandum opinion.

### IV. DISCUSSION

This case raises three discrete issues. First, does the court have subject matter jurisdiction? Second, should the court

---

1. "EEOC."

2. "CP" or "Defendant."

3. Because EEOC had filed previous pleadings that did not completely comport with this District's guidelines for submissions, the court

ordered EEOC to resubmit its pleadings. EEOC did not alter the substance of the pleadings, and CP was not prejudiced in any way. In ruling on CP's motion, the court considered all of the pleadings and materials filed by CP but only the second Response brief filed by EEOC.

consider certain materials presented in an affidavit? Third, did Defendant's conduct amount to sexual harassment, and if so, can Defendant take advantage of any affirmative defenses? The court turns to each of these issues in turn, and finds that none of the arguments are sufficient grounds for a complete grant of summary judgment.

## A. *Subject Matter Jurisdiction*

The court first considers CP's arguments that the court lacks subject matter jurisdiction because EEOC failed to satisfy all of the statutory conditions precedent to filing suit. (Am. Compl. ¶ 6.) CP essentially raises three objections: (1) EEOC did not engage in good faith conciliation; (2) EEOC's suit is broader than the matters it conciliated; and (3) EEOC's suit is untimely.[4] The court addresses each argument in turn, and finds that they are unpersuasive, except with respect to one particular group of statutory claims that was not conciliated. Therefore, the court finds that it has jurisdiction over this civil action, and EEOC may proceed on all grounds save its ADA claims. *See EEOC v. Times–Picayune Pub. Corp.*, 500 F.2d 392, 392–93 (5th Cir.1974) (per curiam) (agency satisfies jurisdictional requirements through notice pleading; any objections not raised by Defendant are thereafter waived).[5]

### 1. *Adequacy of conciliation efforts*

Congress recognizes that the courtroom is not always the best forum for settling workplace disputes. Many employers choose to mend their ways after negotiation and mediation; many employees would prefer a speedy, non-adversarial resolution of their claims. Therefore, EEOC must be mindful of Congress's determination that administrative tribunals are often better suited "to handle the complicated issues involved in employment discrimination cases," and that "the sorting out of the complexities surrounding employment discrimination can give rise to enormous expenditure of judicial resources in already heavily overburdened Federal district courts." *Pearce v. Barry Sable Diamonds*, 912 F.Supp. 149, 153 (E.D.Pa. 1996) (internal citations omitted).

Because one of EEOC's "most essential functions is to attempt conciliation," it must satisfy several conditions before filing suit. *EEOC v. Pet, Inc.*, 612 F.2d 1001, 1002 (5th Cir.1980) (per curiam). First, EEOC must receive a complaint from one of the company's employees. Then, within the next ten days, EEOC must serve written notice of the charge upon the employer. If EEOC determines "that there is not reasonable cause to believe that the charge is true," it shall notify both the complainant and the employer of its findings and dismiss the complaint. *See* 42 U.S.C. § 2000e–5(b). If EEOC determines "that there is reasonable cause to believe that the charge is true," then it has a statutory duty to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* The EEOC may sue the employer only if: (1) more than 30 days have passed since the employee's initial complaint; and (2) the parties have not reached "a conciliation agreement acceptable to the Commission." 29 C.F.R. § 1601.27 (interpreting 42 U.S.C. § 2000e–5(f)(1)).

EEOC has the burden of proving compliance with Title VII's conditions precedent. *See* FED. R. CIV. P. 8(c). Although the statute does not expressly define EEOC's precise investigatory and conciliatory duties, the judiciary has established

---

**4.** CP also contends that the class is overbroad because not all of the women were allegedly harassed by the same supervisors. This argument is unpersuasive, given that an EEOC suit is not subject to the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See General Tel. Co. of N.W., Inc. v. EEOC*, 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "EEOC acts for the benefit of a large group of aggrieved individuals who may have competing and conflicting interests." *EEOC v. Brown–Forman Corp.*, 133 F.R.D. 50, 52–53 (M.D.Fla.1990).

**5.** The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

two principal requirements. First, the agency must conduct a reasonable investigation of the charging party's complaints. Second, the agency must attempt conciliation in good faith. *See EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 107 (5th Cir. 1981). As the Court has stated, in describing the judiciary's role in evaluating conciliation efforts, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." *Id.*

> The EEOC has fulfilled its statutory duty to attempt conciliation if it outlines to the employer the reasonable cause for its belief that Title VII has been violated, offers an opportunity for voluntary compliance, and responds in a reasonable and flexible manner to the reasonable attitudes of the employer.

*Id.* (citations omitted); *see also Marshall v. Sun Oil Co.*, 605 F.2d 1331, 1334–39 (5th Cir.1979).

Thus, the court must look to see whether EEOC made satisfactory and good faith efforts in the conciliation process. To this extent, the absolute refusal to bargain is unacceptable. *See EEOC v. Sears, Roebuck & Co.*, 490 F.Supp. 1245, 1255 (M.D.Ala.1980). So is the refusal to conciliate with a local employer after bringing suit against the nationwide chain and failing to provide adequate notice of possible discrimination close to home.[6] *See id.* Likewise, bad faith may exist if the agency refuses to continue negotiations with an employer who has extended a counteroffer to the agency's opening offer. *See Pet, Inc.*, 612 F.2d at 1002; *EEOC v. One Bratenahl Place Condominium Ass'n*, 644 F.Supp. 218, 219–20 (N.D.Ohio 1986).

But the line between hard bargaining and heavy-handedness is a fine one, indeed, and a court should not scrutinize "the details of the offers and counteroffers between the parties," or "impose its notions of what the agreement should provide, any more than it would if dealing with labor contract negotiations under the Labor Management Relations Act." *EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978). *See also EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984); *EEOC v. Sears, Roebuck & Co.*, 1980 WL 108 at *13 (N.D.Ga.1980); *EEOC v. Mitsubishi Motor Mfg. of Am.*, 990 F.Supp. 1059, 1091 (C.D.Ill.1998); *EEOC v. Pacific Maritime Ass'n*, 188 F.R.D. 379, 381 (D.Or.1999). Moreover, because conciliation is a two-way street, no useful purpose is served by requiring EEOC to attempt further conciliation after an employer rejects its offer. *See Keco*, 748 F.2d at 1101–02. *Cf. Marshall*, 605 F.2d at 1335 (same for ADEA claims).

■ EEOC has interpreted Title VII as allowing enforcement suits if conciliation fails to produce voluntary compliance by the employer that leads to "a just resolution of all violations found and ... eliminate[s] the unlawful employment practice and provide[s] appropriate and affirmative relief." 29 C.F.R. §§ 1601.24–.25. The court finds that EEOC's interpretation of the statute is reasonable. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Thus, in reviewing EEOC's efforts, the court leaves the form and substance of conciliation to the agency's sound discretion. *See id.; see also Keco*, 748 F.2d at 1102.

■ In this case, having reviewed the record as a whole, the court finds that EEOC has properly conciliated its charge against CP.[7] EEOC mailed its reasonable

---

6. *Sears* simply cannot be understood without an appreciation of the context in which it was written. CP believes that the case implies that the court must make its own independent determination that the substance of EEOC's conciliation offer is reasonable. To the extent, if any, that *Sears* supports Defendant's inference, it is no longer persuasive authority.

For more on this point, the court strongly encourages the parties to see LARRY W. YACKLE, REFORM AND REGRET: THE STORY OF FEDERAL JUDICIAL INVOLVEMENT IN THE ALABAMA PRISON SYSTEM 187 (1989).

7. In deciding jurisdictional challenges in a Title VII case, a court may consider exhibits

cause[8] letters to CP on or about September 30, 1999.[9] One of the letters referred to EEOC complaint numbers 130–99–0488, 130–99–0869, and 130–99–1751, all of which had been filed by former CP employee Mary Nell Dinkins.[10] In a complaint filed October 24, 1998, Dinkins alleged that both she and "a class of women have been sexually harassed by being subjected to a sexually hostile work environment and by being subjected to quid pro quo sexual harassment."[11] The complaint added that "women are paid less than men for doing the same work as men .... In addition, women are given less desirable jobs as compared to men ... [and] discriminated against in job assignments, shift assignments and other terms, conditions and privileges of employment."[12]

In its reasonable cause letter, EEOC outlined Dinkins's charges and determined that it had bona fide grounds to believe that Dinkins "and a class of females" had suffered repeated workplace sexual harassment. Specifically, the agency's district director informed CP that:

> I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Charging Party, and a class of females, were discriminated against in violation of Title VII, in that they were subjected to unwanted verbal and physical sexual harassment. Evidence obtained in the investigation also establishes reasonable cause to believe that Charging Party

was retaliated against because she complained of the discriminatory practices.

With respect to Charging Party's allegations that blacks are discriminated against in job assignments, wages and other terms and conditions of employment, the evidence establishes reasonable cause to believe that Charging Party and black females, as a class, were discriminated against.[13]

EEOC's letters to CP expressed a willingness to conciliate multiple pending charges, almost all of which contained allegations of class-wide discrimination. Specifically, EEOC "invite[d] the parties to join with the Commission in reaching a just resolution of this matter," outlined the various compensatory and preventative remedies that might be warranted, and asked CP to propose terms for conciliation within two weeks.

CP responded within the time period and asked for additional time to prepare a response.[14] Ten days later, EEOC granted CP another 16 days to prepare a proposal. EEOC also stated that it would facilitate a conciliation conference if CP initially offered at least $1 million plus injunctive relief. "[I]f your client is not willing to initially offer $1,000,000.00 and not willing to agree to extensive injunctive relief," EEOC stated, "the Commission's position is that the conciliation process would be futile."[15]

---

outside the pleadings. *See EEOC v. Sears, Roebuck & Co.,* 504 F.Supp. 241, 245 n. 3 (N.D.Ill.1980).

**8.** A "reasonable cause letter" is the letter sent by EEOC after investigating a complaint. A "complaint" is the employee's initial charge filed with the commission.

**9.** EEOC also mailed reasonable cause letters and conciliation requests in conjunction with several other complaints. (Def. Ex. KL–1 to –6; Pl.Ex. 12.) Because these documents differ from Dinkins's in no material way, the court refers mainly to Dinkins's charge for purposes of brevity.

**10.** Pl.Ex. 8.

**11.** Pl.Ex. 1 at 2 ¶ XIII.

**12.** EEOC subsequently issued Dinkins a right to sue letter and noted that it would continue to process her charge. (Pl.Ex. 9.)

**13.** Pl.Ex. 8 at 1–2.

**14.** Pl.Ex. 11.

**15.** *See* Pl.Ex. 13; Def. Ex. T. EEOC redacted various portions of this letter, as is required by federal law. *See* 29 C.F.R. § 1601.22 (confidentiality provisions). Those materials were provided by Defendant, and the parties stipulate to their authenticity.

At no time did CP ask about the size of the aggrieved class or ask which other women had been identified as constituting the class.[16] No evidence suggests that CP inquired as to the basis of EEOC's request for damages and equitable relief. Nor is there evidence that EEOC initially offered to settle for one sum, then raised its demand at a later juncture. On the other hand, the court finds that CP never submitted any counteroffer of any kind before refusing to conciliate. CP simply stated that "[b]ased on the conditions for us proceeding through the conciliation proceedings, we do not believe we will be able to pursue the conciliation process."[17] Thus, the court finds that CP never expressed interest in conciliation.

Although CP never filed a motion to dismiss or a motion to stay, it now argues that EEOC's efforts amounted to an unreasonable "all or nothing" approach. The court disagrees, and finds that EEOC conducted a reasonable investigation of the complaints of all charging parties, informed CP of the basis of the reasonable cause determination, and extended an opportunity for voluntary compliance. CP chose not to play ball.

EEOC is a veritable repository of institutional knowledge and experience. There is no basis to speculate that EEOC's request of $1 million and injunctive relief was out of line with what it reasonably believed was necessary to "eliminate the unlawful employment practice and provide appropriate affirmative relief" to a class of aggrieved CP employees. 29 C.F.R. § 1601.24.

Even if the court accepted CP's position that EEOC's initial proposal was somewhat excessive, the court would not find in CP's favor. EEOC needs never present an initial offer that is acceptable to an employer. A well-recognized negotiations tactic is to "open high" and leave room for integrative solutions.[18] During the bargaining process, positions give way to interests; assertions of power and rights dissolve into searches for common ground.[19] This case simply does not present a situation where the agency has walked away from an employer's counteroffer—not even an unrealistic one.

CP's argument is doomed by its own failure to respond to EEOC's proposal in any manner. Because conciliation involves at least two parties, if "the employer rejects the conciliation attempts, the EEOC is free to file suit under Title VII." *Keco*, 748 F.2d at 1101–02; *see also Marshall*, 605 F.2d at 1335 (conciliation is "is an attempt to reach a reasonable, voluntary and mutual understanding.") For all these reasons, the court finds that EEOC has proved that it did not unreasonably or inflexibly respond to CP's reasonable actions. Further conciliation efforts would have been futile and legally unnecessary. *See Klingler*, 636 F.2d at 107; *Marshall*, 605 F.2d at 1336–38; *Keco*, 748 F.2d at 1101–02; *Zia*, 582 F.2d at 532–33.

### 2. Scope of the charge

The court now turns CP's second argument, which has two subparts. The first is that EEOC's enforcement suit should be dismissed because it does not arise out of Dinkins's original complaint of discrimination. The second is that EEOC failed to conciliate the charge with respect to a particular CP employee, Teresa Baxter, who is named in EEOC's Amended Complaint. The court disagrees, and finds that

---

16. Kennedy Aff.

17. Pl.Ex. 12 at 1.

18. "Every litigator knows that few cases can be settled with a single offer, because even if the first offer is reasonable the offeree seldom believes that the opening offer is the final offer. In fact, litigators are expressly advised to start with an inflated demand or a stingy offer in order to leave room for further bargaining." Roy D. Simon, Jr., *The Riddle of Rule 68*, 54 Geo. Wash. L. Rev. 1, 29 n. 162 (1995) (citing X. Frascogna, Jr. & H. Hetherington, Negotiation Strategy For Lawyers 222 (1984)).

19. *See generally* Roger Fisher & William Ury, Getting To Yes (2d ed.1991); William L. Ury Et Al., Getting Disputes Resolved: Designing Systems To Cut The Costs Of Conflict (1988).

the lawsuit is related to the original complaint and has been properly conciliated.[20]

■ An EEOC enforcement suit often seeks relief on behalf of many more people, and on broader grounds, than those initially found in the employee complaint. It is beyond peradventure that the scope of the civil action is not cabined by the original complaint. Instead, the employee's complaint provides EEOC with "a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices." *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975). As the Supreme Court has stated,

> the Courts of Appeals have held that EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.

*General Tel.*, 446 U.S. at 331, 100 S.Ct. 1698. Put another way, an enforcement suit can include any claims within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970); *see also EEOC v. Brookhaven Bank & Trust Co.*, 614 F.2d 1022, 1024–25 (5th Cir.1980); *EEOC v. Sherwood Med. Indus., Inc.*, 452 F.Supp. 678, 680–81 (M.D.Fla.1978); *EEOC v. General Elec. Co.*, 532 F.2d 359, 365–68 (4th Cir. 1976); *EEOC v. Dillard Dep't Stores, Inc.*, 1994 WL 738971 at *2–3 (E.D.Mo.1994).

■ While there are some limits to EEOC's wide-ranging enforcement authority, the seminal *GE* case illustrates the process by which the tiny seeds planted in an initial employee complaint may blossom into a capacious civil action. In *GE*, two male employees filed complaints of racial discrimination in promotion, transfer, general employment. During its investigation, the agency uncovered evidence of gender discrimination. The agency issued a reasonable cause letter informing the employer of its findings of race and gender discrimination, and the agency sought conciliation on all of those issues. The Fourth Circuit reversed the district court's dismissal of the gender discrimination charges. *See GE*, 532 F.2d at 362–63.

*GE*, therefore, teaches that an enforcement suit is permissible so long as EEOC's reasonable cause letter provides the employer with fair notice of the possible violations and gives the employer an opportunity to conciliate the same. *See id.* at 368; *see also Sanchez*, 431 F.2d at 461 (allowing class claim arising from investigation of individual complaints); *Dillard*, 1994 WL 738971 at *3 (same). *Cf. EEOC v. St. Michael Hosp. of Franciscan Sisters*, 6 F.Supp.2d 809, 818 (E.D.Wis.1998).

In this case, EEOC intends to proceed on behalf of Baxter and a group of similarly-aggrieved individuals. The court finds that EEOC has satisfied its jurisdictional obligations except to the extent that it now seeks to pursue claims related to CP's alleged violations of the Americans With Disabilities Act.

EEOC's suit is squarely related to Dinkins's original charge of systemic race and gender discrimination, and it is the reasonable outgrowth of the investigation of charges by Dinkins and other employees.[21] The undisputed evidence shows that conciliation proceedings would have encompassed the claims ultimately brought by Baxter.[22]

The court disagrees with the argument that Baxter and two other women cannot be part of the class, on the grounds that these women never filed charges themselves. What matters is that EEOC served CP notice that it was investigating possible discrimination against a class of women and, particularly, black women.

---

**20.** This does not mean that every *statutory claim* in this lawsuit has been properly conciliated. *See post* at 1246.

**21.** Pl.Ex. 1 at 2 ¶XIII; *Id.* Ex. 8 at 1–2; Pierre Aff.; Def. Ex. KL–1 to –6.

**22.** Pierre Aff; Kennedy Aff.

**1246**

This led to an attempt to conciliate on behalf of an entire class.[23]

EEOC may bring a lawsuit on the basis of any evidence of any illegal actions it acquires, provided that the charge is conciliated. *See Brookhaven*, 614 F.2d at 1025 ("A charge of discrimination is not filed as a preliminary to a lawsuit ...."); *Marshall*, 605 F.2d at 1335; *EEOC v. Rhone-Poulenc, Inc.*, 876 F.2d 16, 17 (3d Cir.1989) (per curiam), *aff'g* 677 F.Supp. 264 (D.N.J. 1988) (affirming district court's "not-so-novel" finding that "a class action suit can be maintained on behalf of individuals for whom no conciliation efforts. of any kind were undertaken.")

■ The court also rejects CP's argument that EEOC must conciliate each individual's Title VII claim separately. Although this proposition has been universally rejected in the context of EEOC suits based on violations of the ADA, *see, e.g., Marshall*, 605 F.2d at 1336, CP believes these cases are irrelevant in the Title VII context. The court disagrees.

CP's proposal is unworkable, for courts could articulate no standard by which to judge the adequacy of each conciliation effort, particularly in light of the law of diminishing marginal returns. "It would be. wasteful, if not vain, to attempt to conciliate the claims of numerous employees, all with the same grievance.... If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful." *Marshall*, 605 F.2d at 1338 n̈. 5 (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968) (Title VII

case)). For all these reasons, EEOC's claims of sex and gender harassment and retaliation may proceed. .

■ At the same time, the court finds that any ADA claim is barred. Even assuming that discovery of such discrimination grew out of EEOC's investigation of Dinkins's original complaint, the court finds that EEOC never attempted to conciliate this matter.[24] The reasonable cause letter's reference to Title VII violations serves notice only of claims of race and gender discrimination—not of possible violations of other employment discrimination statutes. The letter's subsequent references to discrimination against blacks and black females, if anything, further narrow the scope of the charge within Title VII's milieu.[25] Accordingly, the court finds that it has no jurisdiction over any ADA claims. To this limited extent, summary judgment is due to be granted. *See Sherwood*, 452 F.Supp. at 682 (barring prosecution of gender discrimination claims that were not articulated in reasonable cause determination made after investigation); *Stehle v. General Mills Restaurant, Inc.*, 875 F.Supp. 320, 323 (D.S.C.1994) (similar finding in private suit).

### 3. Lack of filing charge and untimely prosecution

■ CP's final arguments warrant little attention. CP contends that EEOC may not file this suit because: (1) EEOC did not file a timely charge; and (2) Baxter herself did not file an EEOC charge.[26] The court finds that these arguments are

---

**23.** Pl.Ex. 8; Pierre Aff.

**24.** EEOC has submitted only Dinkins's reasonable cause letter into evidence. Thus, per Rule 56, that is all that the court considers in ruling on this Motion.

**25.** Pl.Ex. 8 at 1–2.

**26.** A liberal construction of the pleadings uncovers the argument that EEOC is estopped from litigating on behalf of certain individuals who had previously filed their own private suits. While *EEOC v. Union Oil Co.*, 369

F.Supp. 579, 584–86 (N.D.Ala.1974), so holds, the case is unpersuasive authority for it derives support neither from the text of the statute nor its legislative history. *See EEOC v. North Hills Passavant Hosp.*, 544 F.2d 664, 667–72 (3d Cir.1976).

Moreover, EEOC's instant lawsuit is not merely duplicative of those filed in the consolidated case, for EEOC seeks relief on behalf of additional plaintiffs. Consolidation and other procedural devices eliminate any risk of double recovery and unduly burdensome litigation. *See Dickson v. Mortgage & Trust, Inc.*, 1975 WL 177 at *2 (S.D.Tex.1975).

unsupported by case law, the text of Title VII, or legitimate public policy considerations.

■ First, regardless of when Dinkins or any other employee filed her initial charge, EEOC enforcement suits are not subject to the same statute of limitations as private suits. *See Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 361, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) ("[i]n short, the literal language of § 706(f)(1) simply cannot support a determination that it imposes a 180–day time limitation on EEOC enforcement suits."); *Sears,* 490 F.Supp. at 1259. Second, CP has offered no authority to support its argument that an individual employee must file her own complaint in order to obtain relief via an agency-prosecuted lawsuit. Considering that EEOC may investigate and bring suit based upon any findings of illegal practices reasonably related to the charge of any individual, the requirement for which CP urges would be nothing more than an empty formality that serves no useful purpose.

In fact, given the investigation and notice-and-delay provisions imposed by Title VII, EEOC's ability to sue on behalf of multiple aggrieved individuals would be stymied if each person was required to file his or her own separate charge. If anything, CP's reading of the statute would give employers an incentive to suppress information and place EEOC in the untenable position of bringing claims on behalf of a suboptimal number of victims or delaying the vindication of every victim's rights due to an endless series of continuances. Congress plainly did not intend to countenance such mischief by widespread discriminators. Based on the foregoing, CP's jurisdictional arguments are due to be overruled, except with respect to any ADA claims. Summary judgment shall be entered accordingly.

### B. *Motion To Strike*

The court now turns to CP's Motion To Strike, which is contained in its Reply to EEOC's response in opposition to summary judgment. Specifically, CP seeks to strike an affidavit submitted by Teresa Baxter that CP believes contradicts Baxter's earlier deposition testimony. CP's only reasonable objections are those related to Baxter's statements that: (1) she complained to supervisor Kathy Morrow that she was being harassed by another supervisor, Ferrell Wright; and (2) she told plant manager Butch White that she had been harassed.[27] After careful consideration, the court finds that the Motion is due to be partially granted with respect to the second statement but denied in all other respects.

27. The affidavit states, in relevant part, as follows:

04. While Morrow and Ferrell [Wright] were my supervisors I complained to Kathy Morrow about Wright. I told Morrow that I believed that Wright liked me because he was trying to hit on me and he asked me out for dates. I also told Morrow that I did not like Wright's behavior toward me and that I wanted him to leave me alone. In response Morrow told me that she knew Wright liked me, that was the way he treated people that he liked. Morrow told me that I would just have to deal with Wright's behavior because that was just the type of person that he was. She further informed me that it would do no good to complain because Wright and Butch White [plant supervisor] were friends. I took that to mean that White would take no action against Ferrell Wright if I did voice a complaint. Wrights' [sic] actions at this time bothered me and were unpleasant. After my complaint to Morrow[,] Wright's behavior did not improve, and in fact, got worse and, after I attended a party at his house, he began to touch me and make vulgar remarks about my body and ask me to go to bed with him.

. . . .

06. During the time that I was employed by Charoen Pokphand, I also complained to Butch White, Plant Manager of the facility in which I was employed. The first time that I complained to White I told him that I was being harassed and that I pure hated Ferrell Wright and Kathy Morrow. He never made any inquiries as to why I hated the supervisors or as to the nature of the harassment. He merely told me that I was a good worker and that I would have to remain working under Wright. Because of what Morrow had earlier told me about White and Wright being friends I felt their [sic] was little hope that my complaints would do any good.

An affidavit should be disregarded when it is a sham. This occurs "only ... 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir.1986) (quoting *Van T. Junkins & Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir.1984) (brackets in original)).

The decision to strike should not be made lightly. Materials are stricken only if the deponent has made one point "crystal clear" and then attempted to contradict that point in an affidavit. *See Van T. Junkins*, 736 F.2d at 657. Because deposition transcripts rarely evince a deponent's sincerity, full memory, or range of perception, an subsequent affidavit is not a sham if it merely expounds on earlier testimony, gives a more complete answer, differs from earlier testimony if the witness was left wiggle room, or even flatly contradicts an earlier statement if the contradiction is sufficiently explained. *See Tippens*, 805 F.2d at 953–54. More likely than not, a discrepancy between a party's former and latter testimony goes to the weight, not the admissibility, of the evidence. *See id.; Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir.1986); *Brassfield v. Jack McLendon Furniture, Inc.*, 953 F.Supp. 1424, 1431 (M.D.Ala.1996). With these principles in mind, the court turns to Baxter's proffered materials.

### 1. Baxter's complaint to Morrow

CP moves to strike Baxter's affidavit to the extent that she states that she complained to supervisor Kathy Morrow about the activities of another supervisor, Ferrell Wright. CP argues that Baxter, during her deposition, listed "each person she spoke to about her problems," and that Morrow was not one of them.[28] (Reply at 9; 2d Reply at 4–5.) The court disagrees, and finds that Baxter's deposition did not clearly state, in response to unambiguous questions, that she never complained to Morrow.

First, the deposition does not establish whether Baxter was agreeing or disagreeing with counsel's assertion that she never spoke to any other CP employees.[29] Counsel never asked a follow-up to his less than clear questions; instead, he moved to another topic. Thus, Baxter's affidavit is

---

**28.** To support its position, CP points to the following deposition testimony, which centers on Baxter's displeasure at Wright's unwelcome advances during and after a birthday party inside Wright's trailer:

Q: So, I take it that this conversation with your sister took place after [Wright] showed up the second time drunk?
A: Yes, sir.
Q: Did the conversation with Jerry [another CP employee] take place after he showed up to your house drunk?
A: Yes, sir.
Q: When you told Jerry what was going on and he said he would talk to [Wright], and all that—
A: Yes, sir.
Q: —did you go to anybody other than Jerry about [Wright] after he comes to your house drunk? Did you go anywhere then?
A: No, sir. I told my sister. And the rest of the people had jobs and—.
Q: Did you go to Butch?

A: I went to Butch.

Q: ... Did you talk to anybody else about your problems with [Wright]?
A: Judy Kipp.
Q: Who?
A: Judy Kipp.
Q: What's her job at the plant?
A: She used to work at Pack Out.
Q: Anybody else?
A: My family.
Q: No. I'm talking about at CP, did you talk to anybody else at CP about your problems with [Wright]?
A: I didn't trust anybody at CP.
Q: So, I take it that is a no? Your answer is no, you didn't talk to anybody else at CP?
A: No, sir.

*See* Baxter's Dep. at 106; 116–17.

**29.** Although there was no objection to the form of the question, counsel's use of the double negative significantly contributed to the ambiguity.

not necessarily inconsistent with her deposition testimony.

Second, counsel may have been inquiring only about statements given by Baxter after Wright came to her home intoxicated—not before. Plaintiff's position is that Baxter may have communicated with Morrow prior to this evening. Plaintiff's position is reasonable. Putting aside the affidavit, the record reflects that Wright asked Baxter on a date well before Wright's birthday party, and that Baxter relayed her concerns about Wright's unwelcome behavior to Morrow. Based on the foregoing, the court finds that CP's motion to strike is due to be denied. *See Tippens,* 805 F.2d at 953–54.

*2. Baxter's complaint to White*

■ CP's second objection has more merit, and therefore will be granted in part. Baxter's affidavit states that she spoke with plant manager Butch White on several occasions, and that she told him on the first occasion that "[I] was being harassed and that I pure hated Ferrell Wright and Kathy Morrow." [30] However, Baxter's deposition testimony, which is reproduced below, flatly contradicts that of her affidavit.[31] Baxter was directly asked about what she told White, and Baxter unambiguously replied that she did not want to work under Morrow *for the sole reason* that she "pure hated" Morrow and Wright. To underscore that she did not speak about harassment, she stated at deposition that White "didn't know all of this was going on."

While an affidavit may differ from earlier testimony if the affiant proffers some explanation, Baxter has not done so. Accordingly, the court finds that this portion of the affidavit is inherently inconsistent with prior testimony, and it is due to be stricken. *See Van T. Junkins,* 736 F.2d at 657; *Lambert v. Independent Life & Acc. Ins. Co.,* 994 F.Supp. 1385, 1389–90 (M.D.Ala.1998). In all other respects, the motion to strike is due to be denied.

**C. *Substantive Employment Law***

With that matter complete, the court turns to the summary judgment standard. The court finds that CP's motion for summary judgment properly pointed out an absence of material facts raising a genuine issue for trial on CP's allegations of retaliation and disparate treatment.[32] Thus, the burden shifted to EEOC to designate the facts supporting its contentions for trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993); *Nilssen v. Motorola,* 963 F.Supp. 664, 672–74 (N.D.Ill.1997). EEOC's Response does not speak to retaliation or disparate treatment whatsoever. Thus, the court finds that the agency has abandoned such claims, and summary judgment is due to be granted. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) (abandoned claims). As to the remaining claim of sexual harassment, the court finds that myriad factual disputes remain for resolution by the jury.

*1. Hostile work environment*

■ Employers may not discriminate on the basis of sex. Sexual harassment can constitute sex discrimination. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238,

---

**30.** Baxter Aff. ¶ 6.

**31.** The record reflects this conversation, which is focused on the first time when Baxter and White spoke:

Q: What did you tell [White] the reason was you wanted to move?
A: I was tired. I needed another job position. I wasn't doing my job right. I started getting wrote up for things I wasn't doing right, and was stressed out.
Q: Did you tell him any other reason why you wanted to move?

A: I didn't want to be up under [Morrow].
Q: Any other reason?
A: I pure hated both of them, [Morrow] and [Wright].
Q: You what?
A: Pure hated both of them, [Morrow] and [Wright].
Q: Did you tell them anything else?
A: That was it.
Q: What did he say to you?
A: He didn't know all of this was going on.
(Baxter's Dep. at 113.)

**32.** Mot. at 20–22; Am. Compl. ¶ 7.

1244–45 (11th Cir.1999) (en banc). "Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to as 'quid pro quo' harassment)." *Johnson v. Booker T. Washington Broad. Service,* 234 F.3d 501, 508 (11th Cir.2000).

EEOC alleges that sex-based harassment by supervisor Wright created a hostile work environment at the plant. Thus, she must show that: (1) she belongs to a protected class; (2) she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; (4) the harassment was based on her sex or gender; and (5) there is a basis for holding her employer liable. *See Mendoza,* 195 F.3d at 1245. The first and fourth elements are not in dispute. Thus, the court focuses on the remaining factors.

The second and third elements are intertwined and should be considered in tandem, with the understanding that Title VII is not a federal "civility code." Congress has not prohibited "all verbal or physical harassment in the workplace," and the statute "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Instead, Title VII prohibits only the type of severe or pervasive sexual harassment that "alter[s] the conditions of the victim's employment." *Id.* at 81, 118 S.Ct. 998.

The inquiry is a subjective and an objective one. Would a reasonable person in the plaintiff's position find the harassment severe and pervasive? *See Johnson,* 234 F.3d at 509 (citing *Mendoza,* 195 F.3d at 1246). "When determining whether harassment is severe and pervasive, courts consider 'the frequency of the conduct,' 'the severity of the conduct,' 'whether the conduct is physically threatening or humiliating, or a mere offensive utterance,' and 'whether the conduct unreasonably interferes with the employee's job performance." *Id.* (quoting *Mendoza,* 195 F.3d at 1246).

Neither stray remarks nor occasional physical contact can create a hostile work environment. A slip of the tongue here and there is absolutely protected by the law, for excessive litigation imposes an unnecessary drain upon business, thereby leading to artificially depressed wages and inflated prices. Moreover, in our pluralist society, no employee can expect the rough and tumble professional world to completely accommodate his or her private sense of decency, civility, and morality. *See Mendoza,* 195 F.3d at 1246–47 (collecting cases); *id.* at 1255–57 (Carnes, J., concurring). Congress never intended for Title VII to work more than sustained, incremental change over the long run.

Yet, at some point, the community has a right to determine when workplace misconduct has become intolerable. These situations arise if the misconduct involves "patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 586 (11th Cir.2000) (quoting *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999)). This is one of the few cases where summary judgment is inappropriate.

Between November 1998 and early January 1999, Baxter was subjected to repeated, pervasive sexual harassment by supervisor Wright. Wright constantly touched Baxter's breasts and buttocks. He tried to kiss Baxter two or three times a day. He told Baxter that "he always wanted a beautiful black woman," that he would do "whatever it took to get ... and

keep" Baxter, and that "he was Fair Daddy. He gets what he wants." He showed up intoxicated at Baxter's home and "kept saying he was in love" with her. As a result, Baxter's felt overwhelmed and her productivity suffered. On these facts, there is no doubt that Baxter suffered a "continuous barrage of sexual harassment" sufficient to establish an allegation of hostile work environment.[33] *Dees v. Johnson Controls World Serv., Inc.*, 168 F.3d 417, 418 (11th Cir.1999).

### 2. Faragher/Burlington affirmative defense

■■■ Because Wright created an intolerable work environment that affected the terms of Baxter's employment, CP may avoid liability only if it can establish the two-prong affirmative defense that: (1) CP exercised reasonable care to prevent and correct promptly any sexual harassment; and (2) Baxter unreasonably failed to take advantage of any preventive or corrective opportunities provided by CP or to avoid harm by other means. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1297–1300 (11th Cir. 2000).

Courts evaluating the reasonableness of an employer's actions should place a thumb on the side of the scale favoring summary judgment. As Judge Shadur recently noted, any rational employer exercises far more care than is reasonably necessary, given "the universal knowledge that it takes only an aggressive employee, a complaisant lawyer and $150 to embroil any employer in protracted and expensive litigation." *Monley v. Q Int'l Courier*, 128 F.Supp.2d 1155, 1161 (N.D.Ill.2001). After weighing the evidence in this case, howev-

er, the court finds that CP has failed to discharge its burden.

### a. First Prong: Prevent and promptly correct

The existence of a formal anti-harassment policy is neither a necessary nor sufficient condition to establish the first prong of *Faragher*'s affirmative defense. *See Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 118 (3d Cir.1999); *EEOC Policy Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, EEOC Notice No. 915.002* [hereinafter *EEOC Notice 915.002* ] (June 18, 1999), *available in* 1999 WL 33103140 at *14.

However, the first prong is met if an employer promulgates a policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress." *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1554 (11th Cir.1997). A policy must not be administered "in bad faith" or be "otherwise defective or dysfunctional." *Madray*, 208 F.3d at 1299 (quoting *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275); *see also Miller v. Woodharbor Molding & Millworks, Inc.*, 80 F.Supp.2d 1026, 1028–29 (N.D.Iowa 2000) (collecting cases illustrating effective written policies).

A policy is "defective" if those responsible for its enforcement lack training and knowledge sufficient to recognize, prevent, and correct workplace discrimination. As EEOC has stated in one of its policy notices: [34]

> An employer's duty to exercise due care includes instructing all of its supervisors and managers to address or report to appropriate officials complaints of harassment regardless of whether they are officially designated to take com-

---

**33.** CP also moves for summary judgment against two particular women that EEOC has identified as part of the class. The motion is due to be denied. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir.1999) (admissibility of evidence).

**34.** The agency's guidelines, policy statements, and notices are persuasive authority for a court to consider. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Scott v. Opelika City Schools*, 63 F.R.D. 144, 149 n. 12 (M.D.Ala. 1974) (Johnson, C.J.)

plaints and regardless of whether a complaint was framed in a way that conforms to the organization's particular complaint procedures.

.    .    .    .    .

An employer should ensure that its supervisors and managers understand their responsibilities under the organization's anti-harassment policy and complaint procedure. Periodic training of those individuals can help achieve that result. Such training should explain the types of conduct that violate the employer's anti-harassment policy; the seriousness of the policy; the responsibilities of supervisors and managers when they learn of alleged harassment; and the prohibition against retaliation.

*EEOC Notice 915.002, available in* 1999 WL 33103140 at *15.

If an employer has properly administered its policy, then it will have satisfied its burden, for "it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances." *Madray,* 208 F.3d at 1300 (quoting *Farley,* 115 F.3d at 1554).

A jury could find that CP failed to exercise reasonable care to prevent and correct promptly sexual harassment. Initially, there is evidence that the policy was not reasonably calculated to further any preventative end. Morrow is a point person designated to receive employee complaints. Unfortunately, CP gave her only one abbreviated training session on sexual harassment. The company never reviewed the written policy with Morrow, and she never read it on her own. Moreover, CP modified its policies at some point, and Morrow could not explain or recall which policy was in effect—or when. Indeed,

Morrow's understanding of her duties conflicts with the personnel manager's understanding of the same.[35]

This poor training was not limited to front line supervisors like Morrow. Plant manager Butch White, for example, has never been trained on handling complaints. Neither has human resources director Kevin Long. In fact, no training manual ever was distributed to department heads until April 1999, and Long has done nothing more than "glance over" the policy. Likewise, there is no evidence that CP's supervisors monitored the policy's daily administration. CP clearly did not make reasonable efforts to inform its supervisors how they could prevent harassment. *See Morgan v. Fellini's Pizza, Inc.,* 64 F.Supp.2d 1304, 1315 (N.D.Ga.1999).

CP also has failed to show that it promptly corrected harassment *post ante.* In so finding, the court first considers whether CP had notice of Baxter's plight. "[T]he employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment ... then it is liable unless it took prompt corrective action." *Dees,* 168 F.3d at 422. An employee must articulate her complaint in a manner reasonably calculated to trigger the supervisor's duty of care. Factors to consider include the time, place, and manner of the complaint, including whether the employee has specially requested the employer to postpone taking immediate action.[36] *See Breda v. Wolf Camera & Video,* 222 F.3d 886, 890 (11th Cir.2000); *Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1364–66 (11th Cir.1999).

Because Morrow is designated as someone to whom complaints may be made, any complaint to Morrow constitutes notice to

---

**35.** Long's Dep. at 100–01; Morrow's Dep. at 122.

**36.** In some situations, an employee may request that the supervisor refrain from acting until the employee attempts to resolve the issue herself. The employer should not be faulted for complying with the employee's request, provided that the employer takes rea-

sonable measures to ensure that the harasser does not commit similar misconduct towards other employees in the interim. *See Madray,* 208 F.3d at 1301. "In those cases, the employer's duty to the other employees would take precedence, and the company would most likely not be justified in honoring a single employee's request not to act." *Torres v. Pisano,* 116 F.3d 625, 639 (2d Cir.1997).

CP. *See Breda,* 222 F.3d at 890. Moreover, even if no employees file formal complaints, CP cannot avoid liability if the harassment that is "so broad in scope and so permeate[s] the workplace that it must have come to the attention of someone authorized to do something about it." *Fall v. Indiana Univ. Bd. of Trustees,* 12 F.Supp.2d 870, 882 (N.D.Ind.1998). *See also Splunge v. Shoney's Inc.,* 97 F.3d 488, 490 (11th Cir.1996); *Sims v. Health Midwest Physician Serv. Corp.,* 196 F.3d 915, 919–20 (8th Cir.1999).

An employer acts reasonably to correct harassment if it responds to its knowledge of harassment appropriately and with celerity. Remedial measures should be designed to stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur. These remedial measures need not be those that the employee requests or prefers, as long as they are effective. A remedial measure that makes the victim of sexual harassment worse off, however, is ineffective per se. *See Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir. 1990).

CP has utterly failed to prove that it acted reasonably. Baxter told Morrow in fall 1998 that Wright was "hitting on" her and asking her out on dates. The court finds that this complaint could constitute sufficient notice of her troubles. It was reasonably detailed, made at the workplace in a professional setting, and not subject to any caveats or qualifications.[37] In response, Morrow stated that "it would do no good to complain because Wright and White were friends," and that Wright treats all attractive women in a similar fashion. Even worse, Morrow initiated no investigation of the complaint, and Wright's misconduct persisted over the next several months. There is no doubt

that CP turned a blind eye to the evil in its midst. *See Varner v. National Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994).

### b. Second Prong: Unreasonable failure to use the policy

The second issue, then, is whether CP has shown that Baxter unreasonably failed to use CP's complaint procedure. For the reasons explained above, CP's argument on this point is moot. *See Miller v. Kenworth of Dothan, Inc.,* 82 F.Supp.2d 1299, 1307–09 (M.D.Ala.2000). However, even assuming that Baxter's conversation with Morrow did not constitute a complaint, the court finds evidence suggesting that Baxter did not act unreasonably by failing to utilize CP's policy.

To be sure, an employee cannot disregard an effective sexual harassment policy that is being properly administered—not even if she has some trepidation about filing a report. Employees cannot sleep on their rights. *See Madray,* 208 F.3d at 1301–02. Yet "an employer is not necessarily insulated from Title VII liability ... if the failure to report is attributable to the conduct of the employer or its agent." *Distasio,* 157 F.3d at 64. On one occasion, Baxter presented Morrow with a complaint from several co-workers, and Morrow "wadded it up in a ball and instructed me to pay no attention to the women's complaints and indicated that if I did listen to them it would cost me my job."[38] Morrow also made degrading remarks about the women alleging harassment.[39]

It goes without saying a shield cannot double as a sword; an employer may not protect itself by strewing mines throughout its safe harbor. If an administering

---

**37.** An employee is " 'under no duty to report [harassment] a second time before the company is charged with knowledge of it.' " *Madray,* 208 F.3d at 1302 (quoting *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 65 (2d Cir. 1998)).

**38.** Baxter Aff. ¶ 5.

**39.** Baxter's Dep. at 130–42.

supervisor informs an employee that the use of a complaint procedure invites retaliation, the employee does not act unreasonably if she fails to use it. Even if the policy authorizes multiple supervisors to receive and process complaints, the employee may reasonably believe that the entire process is tainted. Any contrary interpretation of Title VII would encourage mischief by employers, impose an undue burden upon employees, and frustrate Congress's interest in encouraging victims to freely and voluntarily report harassing behavior. *See Distasio,* 157 F.3d at 64; *EEOC Notice 915.002, available in* 1999 WL 33103140 at *16–17. Based on the foregoing, CP has failed to establish either prong of its affirmative defense, and summary judgment is due to be denied.

## V. ORDER

Accordingly, it is CONSIDERED and ORDERED as follows:

(1) Defendant's jurisdictional objections be and the same are hereby SUSTAINED AND OVERRULED IN PART;

(2) Defendant's Motion To Strike be and the same is hereby GRANTED AND DENIED IN PART;

(3) Defendant's Motion For Summary Judgment be and the same is hereby GRANTED with respect to Plaintiff's claims of disparate treatment and retaliation and DENIED in all other respects.